STATE *ex rel.* JAMES DARRELL SMITH

*v.*

GEORGE M. SCOTT,

*Circuit Judge* OF ROANE COUNTY

(No. 13938)

Decided October 25, 1977.

*Charles E. McCarty,* for relator.

*Chauncey H. Browning,* Attorney General, *William D. Highland,* Assistant Attorney General, for respondent.

MILLER, JUSTICE:

In this prohibition proceeding the relator seeks to prevent the Circuit Court of Roane County from exercising criminal jurisdiction over his person. Relator contends that the order transferring his case from the juvenile court to the criminal court was void as the juvenile judge did not conduct a meaningful transfer hearing as mandated by *Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966), and as required by this Court in *State v. McArdle,* 156 W. Va. 409, 194 S.E.2d 174 (1973). We agree.

The essential facts are not contested. On March 17, 1977, relator was arrested on a warrant issued by a Roane County magistrate which charged him with grand larceny of a motor vehicle valued at $250. He was

brought before the magistrate who, upon learning that relator was under the age of eighteen (18), transferred the case to the Circuit Court of Roane County. *W. Va. Code,* 49-5-3 (1975).

On March 25, 1977, the Circuit Court, exercising its juvenile jurisdiction, appointed counsel for the relator. On this same day, the court proceeded to hear the matters arising on the written motion filed by the prosecuting attorney requesting transfer of the case from the juvenile side of the court to the criminal side of the court.

The motion set out two grounds to support the requested transfer: (1) that the offense charged was a serious crime; (2) that the infant defendant was 17 years of age, being born on January 30, 1960, and as a consequence, the juvenile court's jurisdiction was too limited to properly handle the case.

The court, at the beginning of the transfer hearing, asked the relator's attorney if the facts in the motion were in dispute. The attorney responded that there was no dispute as to the birth date. The court then stated that, the facts being admitted, the motion stated a prima facie case for granting transfer.

Relator's attorney was asked if he had any evidence in opposition to the motion. Counsel advised he had no evidence to offer, and the court granted the transfer motion. The reasons stated by the court for granting the transfer were that:

> "There is not sufficient time remaining in the jurisdiction of this court within which to determine the guilt or innocence of the defendant of the charge contained in the warrant and to effectuate any meaningful program of rehabilitation or punishment."

Both *Kent* and *McArdle, supra,* require that before a court can waive its juvenile jurisdiction it must under due process; (1) afford adequate notice to the juvenile of the hearing; (2) appoint counsel in case of indigency; (3)

conduct a meaningful hearing; and (4) issue a statement of the reasons for relinquishing juvenile jurisdiction.

Neither *Kent* nor *McArdle* attempted to formulate standards which would be deemed meaningful in guiding the judge in his decision to retain or relinquish his juvenile jurisdiction. In *Breed v. Jones*, 421 U.S. 519, 537-538, 44 L. Ed. 2d 346, 360, 95 S. Ct. 1779 (1975), the Court recognized that the development of such standards was a task left to the individual states.

*Kent* did set out in an appendix a policy memorandum, promulgated by the Judge of the Juvenile Court of the District of Columbia, which contained criteria to be considered by the court in determining whether to waive juvenile jurisdiction in favor of adult criminal jurisdiction.[1] It is these criteria which have largely set the

---

[1] "1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

"2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.

"3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

"4. The prosecutive merit of the complaint, i.e., whether there is evidence upon which a Grand Jury may be expected to return an indictment (to be determined by consultation with the United States Attorney).

"5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the U. S. District Court for the District of Columbia.

"6. The sophistication and maturity of the Juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

"7. The record and previous history of the juvenile, including previous contacts with the Youth Aid Division, other law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.

"8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court."

Paradoxically, as stated in note 4 of *Kent*, these standards were rescinded at the time of the *Kent* opinion.

standards for other courts and which have been the model for statutes governing transfer hearings in other jurisdictions. *See, e.g., People in Interest of L.V.A.,* ___ S. D. ___, 248 N.W.2d 864 (1976); *Summers v. State,* 248 Ind. 551, 230 N.E.2d 320 (1967); *Cal.* Welf. & Inst. Code § 707 (West); Tex. Fam. Code Ann. tit. 3 § 54.01(f) (Vernon).

In 1977, the West Vriginia Legislature made extensive revisions to the child welfare provisions found in *W. Va. Code,* 49-5-1, *et seq.* Acts of the Legislature, ch. 65 (1977); Acts of the Legislature, First Extraordinary Session, ch. 6 (1977). A transfer section, which sets out several factors to be considered by the juvenile judge, was added. We are of the view that while these statutory standards must be followed, they need not be the only criteria.

A juvenile judge, in weighing the gravity of the offense allegedly committed, should accord greater weight to offenses against the person than against property. The same equation is applicable to the element of violence. In this regard, the court is at liberty to balance the maliciousness and deliberateness of the act against possible justifications, such as self-defense, provocation and lack of mental capacity. Moreover, previous acts of delinquency, their frequency, seriousness and relationship to the present charge are all relevant considerations in determining the rehabilitative prospects of the juvenile.

The age of the juvenile is of some significance as it bears upon the opportunity of the court to exercise its jurisdiction and to select appropriate procedures for rehabilitation. However, age alone should never be the determinative factor. The Legislature, in enacting the juvenile statute, manifested an intention that juveniles should, in the ordinary case, be subject to juvenile court jurisdiction. Transfer therefore should be the exception and not the rule. *See, Kent, supra,* 383 U.S. at 560-61; *Harling v. United States,* 295 F.2d 161, 164-65 (D.C. App. 1961).

We note that *Kent* also requires that if the juvenile's social and juvenile records are to be considered by the

court at the transfer hearing, copies of the same are required to be supplied in advance to the juvenile's counsel. *Kent* recognizes that the juvenile court may consider records which have been submitted ex parte, but at the same time it is required to supply this material to the juvenile's attorney in order that counsel may have an opportunity to test its reliability. The disclosure of a juvenile's report to his counsel is now statutorily mandated in this State. *W. Va. Code*, 49-5-1(c) (1977).

All of the procedural rules surrounding a transfer hearing have evolved from the basic premise that a transfer hearing is a critical stage in the proceeding against the juvenile. *See, Kent v. United States, supra; Watkins v. United States*, 343 F.2d 278, 282 (D.C. Cir. 1964); *State v. McArdle, supra.* The 1977 amendments to *W. Va. Code*, 49-5-1, *et seq.*, have added further procedural safeguards beyond those set out in *Kent* and *McArdle*.[2]

In theory the transfer hearing is invoked by the State where there are special circumstances which may justify relinquishment of juvenile jurisdiction. The hearing is not intended to establish guilt. As the court in *Breed v. Jones, supra*, points out, if the transfer hearing is not held until after the adjudicatory hearing, jeopardy has already attached; a subsequent transfer and trial in the criminal court would violate the Double Jeopardy Clause. However, *Breed* does not preclude the juvenile court from fulfilling its duties during a transfer hearing, and the fact that the juvenile court hears facts surrounding the commission of the alleged offense does not mean that the hearing becomes adjudicatory so as to invoke the principle of *Breed*.[3]

---

[2] The burden of proof is on the petitioner, not the juvenile. Testimony of the juvenile at a transfer hearing is not admissible at the adjudicatory or criminal proceeding. *W. Va. Code*, 49-5-10. The jurisdiction to transfer appears to now be limited in all cases whether capital or not to children 16 or over. *W. Va. Code*, 49-5-10. Compare *W. Va. Code*, 49-5-3, prior to the 1977 amendments, and *Code* 49-5-2, as amended in 1977.

[3] *Breed* points out that under certain state statutes the judge who holds the transfer hearing may be precluded from presiding at

On the present record there is no question that the transfer hearing was not adjudicatory; consequently, there can be no claim of double jeopardy. The error lies solely in the fact that the record is barren of any relevant data which could have provided a proper foundation for the juvenile court to make a meaningful decision as to the propriety of transfer.

In awarding this writ we are of the view that the Circuit Court has not lost its juvenile jurisdiction over relator and it may either hold a further transfer hearing consistent with the principles set out in this opinion, or it may elect to hold an adjudicatory hearing.[4]

*Writ awarded.*

---

the subsequent adjudicatory hearing. Note 17, 421 U.S. at 537, 44 L. Ed. 2d at 360. We believe that a juvenile judge who, during a transfer hearing, obtains knowledge of the facts surrounding an alleged crime and the involvement of a juvenile defendant, is not ordinarily precluded from holding a subsequent adjudicatory or criminal proceeding. We are of the view that the integrity of the fact-finding process is preserved by the right to have a jury trial in a juvenile proceeding by *W. Va. Code*, 49-5-6 (1975), and in a criminal trial by Article III, Section 14 of the *West Virginia Constitution.*

[4] Prior to and after the 1977 revision of *W. Va. Code*, 49-5-1, *et seq.*, juvenile jurisdiction arises at the time of the commission of the act of delinquency. Consequently, the general rule under such statute is that it is the age at the commission of the offense which determines juvenile court jurisdiction. *See, e.g., Metcalf v. Commonwealth*, 338 Mass. 648, 156 N.E.2d 649 (1959); *State v. Musser*, 110 Utah 534, 175 P.2d 724 (1946), vacated on other grounds, 333 U.S. 95, 92 L. Ed. 562, 68 S.Ct. 397; *Mattingly v. Commonwealth*, 171 Ky. 222, 188 S.W. 370 (1916).