STATE OF WEST VIRGINIA

*v.*

MARY JO STANLEY

(No. 14979)

Decided November 17, 1981.

*Beckett, Burford & James* and *Robert H. Burford,* for appellant.

*Chauncey H. Browning,* Attorney General, and *Marianne K. Hoover,* Assistant Attorney General, for appellee.

NEELY, JUSTICE:

Appellant, Mary Jo Stanley, appeals her conviction of second-degree murder in the Circuit Court of Cabell County. On the evening of 4 July 1978 the appellant shot her father in the back of the head as he was beating the appellant's mother. The two women, though shocked by what had transpired, eventually decided to put the body in the family car and drive it out of town. By taking the victim's watch and ring, they hoped to make it appear that a robbery and murder had taken place. Returning to their house in another car they called the police and made a missing person report.

On 6 July 1978 the Wayne County Sheriff's Department discovered the body in the car and notified the Huntington Police Department. Officer Tom Bevins of the Huntington Police Department first talked with the victim's family on that date.

On 11 July 1978 Officer Bevins returned to the victim's house and asked the appellant, her mother and her children to come down to the police department to assist in giving information about the deceased. When the four family members got to the police station at approximately 4:00 p.m., they were told to sit and wait until a room became available for questioning. The police interrogated the appellant's daughter, who was nine months pregnant at the time, first. After about an hour with her, Officer Bevins questioned the appellant's mother for nearly an hour and a half. At approximately 8:00 p.m. the appellant was questioned. The appellant's son was questioned last. At about 11:00 p.m. Officer Bevins began questioning the appellant again. During this period of questioning he took a tape-recorded statement from her in which she admitted shooting her father during a domestic fight. Officer Bevins

then obtained arrest warrants for the appellant, her mother and her son; at around 2:00 a.m. on 12 July he called the appellant's attorney.

Although the appellant and her family were never told that they were free to leave the police department, the trial court found that initially their freedom of action had not been deprived in any significant manner. The appellant and her family were not physically abused, threatened or promised leniency. The trial court, however, also found that the interrogation became accusatory and the appellant was no longer free to leave the police department after the interrogation of her son. At approximately midnight the appellant's uncle came to the police station to speak with the family members; however, he was warned to leave the department unless he wanted to be jailed for "disrupting an investigation." The trial court determined that probable cause to arrest the appellant did not exist until after the appellant's statement was taken. Before each interrogation, Bevins gave the family members their *Miranda* warnings and he had them sign waivers after each had given a tape-recorded statement.

Appellant asserts that her conviction should be reversed because the State's case was based upon the inadmissible statements of the appellant. We agree and reverse and remand for a new trial.

Shortly after the appellant's trial the United States Supreme Court handed down its decision in *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed. 2d 824 (1979). In *Dunaway* police picked up the defendant on less than sufficient information to get an arrest warrant. Although the police did not tell Dunaway that they were putting him under arrest, they treated him as if he were. After being given the *Miranda* warnings at police headquarters, Dunaway made statements and drew sketches that later were used against him at trial. After determining that such restraint was greater than that permitted under the "stop and frisk" exception to the probable cause requirement enunciated in *Terry v. Ohio*, 392 U.S. 1, 88

S.Ct. 1868, 20 L.Ed. 2d 889 (1968) and its progeny,[1] the Court determined that the police had violated Dunaway's Fourth and Fourteenth Amendment rights. The Court then held that the statements and the drawings were inadmissible because they were the direct result of the unconstitutional seizure of the suspect.

*Dunaway* serves to enforce the policy of the Fourth Amendment which forbids arrests except upon the issuance of a warrant or, in extraordinary cases, upon such probable cause as would have permitted a warrant to be issued. *Dunaway* does this by foreclosing the temptation for "law enforcement officers to violate the Fourth Amendment with impunity, safe in the knowledge that they could wash their hands in the 'procedural safeguards' of the Fifth." 442 U.S. at 219, 99 S.Ct. at 2260.

Although the facts of this case are distinguishable from *Dunaway*, the principle there established still requires reversal in this case. Unlike the facts in *Dunaway* the appellant was not a suspect at the time our police picked her up, and she voluntarily accompanied them to the police department. At that point her liberty had not been restrained—a "seizure" had not occurred. However, such a "seizure" did occur when, after the interrogation of her son, the appellant was no longer free to leave the police department. *Dunaway* applies because as the trial court found, the police still lacked probable cause to arrest at the time the "seizure" occurred.

While solicitous of the appellant's Fifth Amendment rights against self-incrimination, the police nonetheless abused her rights under the Fourth and Fourteenth

---

[1] The United States Supreme Court has carved out narrowly defined exceptions to the probable cause standard for "seizing" suspects. Providing that the police action is neither long nor intrusive, police may stop and question a suspect on the basis of a reasonable suspicion. If police have a reasonable suspicion that suspect is armed, they may conduct a pat-down search for weapons. *See Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed. 2d 331 (1977); *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed. 2d 607 (1975); and *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 2d 612 (1972).

Amendments. After seven hours in police custody, including two hours of interrogation, the appellant confessed. Following the analysis of *Dunaway*, we find no intervening circumstances between the illegal seizure of the appellant and her subsequent statement that would free that statement from the taint of illegal police conduct. *See also Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963). Hence the tape-recorded confession of the appellant was inadmissible.

We are aware, however, that there are occasions when guilty persons deliberately attempt to mislead the police by appearing to cooperate, or by agreeing to come voluntarily to the police headquarters for conversations in an attempt to avert suspicion from themselves. We are concerned by the possibility that such persons may make inculpatory statements during such voluntary encounters and later claim that they were being restrained against their will. Consequently, the police should protect the record in such events by making it clear to those whom they are about to interrogate that they are not under arrest and are free to leave. *See United States v. Brunson*, 549 F.2d 348 (5th Cir.), *cert. denied*, 434 U.S. 842, 98 S.Ct. 140, 54 L.Ed. 2d 107 (1977); *State v. Morgan*, 299 N.C. 151, 261 S.E.2d 827 (1980).

Since the admission of the confession amounts to constitutional error and since the confession was not a negligible part of the State's case, we find that the error was reversible. *Cf. State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed. 2d 320 (1980). We therefore remand for a new trial. In so doing we note that the second trial will not violate the double jeopardy clause of the Fifth Amendment. Had this case been reversed on the grounds that the State had presented insufficient evidence to convict, then the State would not be given a second chance to mount evidence against the appellant. However, since this case is reversed because we have found part of the State's case to have been inadmissible, the State is not barred from presenting

alternative evidence to prove its case. *See* syl. pt. 5, *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979).

Accordingly for the reasons set forth above the judgment of the Circuit Court of Cabell County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*