331 S.E.2d 813

**In the Matter of MARK E.P.**

**In the Matter of JOHN A.L.**

**Nos. 16280, 16279.**

Supreme Court of Appeals of
West Virginia.

Jan. 30, 1985.
Decided June 14, 1985.

Ben B. White, III, Princeton, for John A.L.

David M. Katz, Bluefield, for Mark E.P.

Janet Frye Steele, Asst. Atty. Gen., Charleston, for State.

MILLER, Justice:

Two juveniles, John A.L. and Mark E.P., appeal from a transfer order of the Circuit Court of Mercer County which waived the court's juvenile jurisdiction and transferred the juveniles to adult criminal jurisdiction, pursuant to W.Va.Code, 49–5–10 (1978). A direct appeal of the transfer order is authorized by W.Va.Code, 49–5–10(f). A joint transfer hearing was held and we have consolidated the cases.

The two youths were charged with murdering a thirty-seven-year-old woman named Lutricia Dickens by tying her to a bed in her home, pouring gasoline on the bed, and then setting it on fire.

Both juveniles contend that statements they made while in police custody, which were introduced against them at their joint transfer hearing, were inadmissible and should therefore have been excluded from consideration in the transfer process. They maintain that if the confessions are excluded, there was insufficient probable cause to support a transfer to adult jurisdiction.

The circumstances surrounding their confessions were as follows. Detectives Helton and Poe of the Bluefield Police Department were assigned to investigate the crime. Their questioning of people in the neighborhood, including the juveniles, during the week following Ms. Dickens' death, led them to suspect the juveniles.

Approximately one week after the crime, Helton and Poe went to see Mark E.P. at the sewage treatment plant where he was working for the summer. They told the juvenile that they wanted to talk to him about Ms. Dickens' death and asked him to accompany them to the police station. Knowing that he was sixteen years old, the

officers asked him if he wanted to call his mother. He told the officers he did not want his parents present.

Once at the police station, *Miranda* warnings were read to Mark E.P. at 9:55 a.m. The juvenile initialed a form, headed "YOUR RIGHTS," next to each of the listed rights, indicating that he understood them. He signed a waiver at the bottom of the form indicating that he was willing to talk with the police officers without having a lawyer present. The waiver also contained a statement that there were no promises, threats, or other pressure or coercion involved.

Shortly after Mark E.P. signed the waiver form, he orally confessed to being present at the crime scene. This confession was reduced to writing and signed by him. His statement basically blamed the killing on his co-defendant John A.L. The statement was completed at 11:30 a.m.

Mark E.P. was then transported to Princeton and taken before a magistrate, who issued an arrest warrant. During the ride to the magistrate's office, he made an additional oral statement to Detective Helton. In this statement, he said that John A.L. took $165 from the Dickens' house and a brown pouch bearing the abbreviation "SAG." He indicated that the pouch was hidden in John A.L.'s closet and that John's ears had been burned in the fire. He also said that the robbery had been discussed prior to going to the Dickens' house.

Based on Mark E.P.'s statements, the magistrate issued an arrest warrant for John A.L. Detective Poe obtained a search warrant authorizing a search of John A.L.'s residence for certain articles named in Mark E.P.'s statement.

John A.L. was arrested, pursuant to the warrant, at his residence. A search of his bedroom produced two sticks, a leather pouch with the letters "SAG" on it, and a knife with a broken lock mechanism. Helton observed that the juvenile had burn marks on both ears.

While the search was underway, John A.L.'s great-grandmother, with whom he lived, came home. The officers informed her that they were arresting John A.L. According to Detective Helton, she indicated that she would come down to the police station later, but first she had to make a phone call. In his testimony at a preliminary hearing in this case, Helton recalled that she said she was not going to call a lawyer.

Helton testified at the transfer hearing that John A.L. was then taken to the Bluefield police station for fingerprinting and photographing. He was first taken into an office, where *Miranda* rights were read. He initialed the form next to each right and signed a waiver of rights at the bottom of the form. Helton testified that he neither threatened nor coerced the juvenile with regard to his questions and that the juvenile did not appear to be under the influence of drugs or alcohol.

In his initial oral statement, the juvenile attempted to exculpate himself by stating that while he was initially at the Dickens' house, he got scared and ran away from it. From the top of the hill, he saw some other boys in the area and then saw the Dickens' house on fire. He went back to try to re-enter the house, but could not.

Detective Helton transcribed this statement, and John A.L. signed it. Helton testified at the transfer hearing that upon completion of the statement, he told the juvenile that "the sad thing about it was that nobody would believe it." According to Helton, the juvenile then admitted that the statement was inaccurate. In his second statement, the juvenile admitted hitting Ms. Dickens with his stick, tying her to the bed, and pouring gasoline on the bed. At this point, the interrogation stopped. John A.L.'s great-grandmother had contacted a lawyer, who arrived at the police station and advised John A.L. to say nothing further to the police.

The State offered all the statements at the transfer hearing. Mark E.P. took the stand for the limited purpose of testifying about the circumstances surrounding the taking of his statement. He testified that he had the opportunity to call his parents, but declined because he did not want them

to come to the police station. At some point during the interrogation, the door to the room was closed. He stated that when he told the officers he left the Dickens' house, they accused him of lying and told him, "you stood there and watched." He said that the officers told him they would inform the court that he had been cooperative after he signed the statement. He also stated that some portions of the statement were incorrect, but that he signed the statement because he was nervous. He admitted that he was neither threatened nor mistreated during the time that he was with the police.

Counsel for Mark E.P. objects to the admission of his client's statement on the ground that he was under duress and that the waiver of *Miranda* rights was therefore not voluntary. Counsel for John A.L. argues against the admission of the statements of both juveniles on the grounds that there were violations of W.Va.Code, 49–5–1(d) (1982), relating to the taking of a juvenile's confession. The claim is also made that W.Va.Code, 49–5–8 (1982), dealing with presenting juveniles to a judicial officer, was violated and mandates suppression of the statements. Reliance is also placed on *State ex rel. J.M. v. Taylor*, 166 W.Va. 511, 276 S.E.2d 199, 25 A.L.R.4th 1063 (1981), which, it is argued, precludes juveniles from making a waiver of their Fifth Amendment rights.

### I.

With regard to the violation of W.Va. Code, 49–5–1(d) (1982), relating to the admissibility of confessions of juveniles,[1] the juveniles contend the statutory language means that such statements are inadmissible unless made in the presence of the child's counsel or in the presence of and with the consent of the child's fully informed parent or custodian. It is contended that the only statements excepted from this rule are res gestae by children under sixteen but above thirteen years of age. This argument is based on the absence of a comma after the words "res gestae."

In *State v. Howerton*, 174 W.Va. 801, 329 S.E.2d 874 (1985), we rejected a similar construction of the 1978 amendment to W.Va.Code, 49–5–1(d), which provided in pertinent part: "Extrajudicial statements other than res gestae statements by a child under sixteen years of age, made to law enforcement officials or while the child is in custody and outside the presence of the child's counsel shall not be admissible."[2]

In *Howerton*, we found that the absence of commas to set off the phrase "other than res gestae statements" did not mean that for children sixteen years of age or older no extrajudicial statements could be obtained without counsel or parents being present. We said that "[t]o accept the defendant's contention would lead to the absurd result not contemplated by the legislature of placing an evidentiary restriction on the admissibility of res gestae statements based on the age of the defendant." 174 W.Va. at 804–805, 329 S.E.2d at 877.

We also noted in *Howerton* that ordinarily res gestae statements are admissible as an exception to the hearsay rule by virtue of their spontaneity. It is apparent that the legislature chose in W.Va.Code, 49–5–1(d), to exempt them from the strictures of this subdivision because they are analogous to volunteered or spontaneous statements

---

**1.** W.Va.Code, 49–5–1(d) (1982), provides in pertinent part:

"Extrajudicial statements, other than res gestae by a child under sixteen years of age but above the age of thirteen to law-enforcement officers or while in custody, shall not be admissible unless made in the presence of the child's counsel or made in the presence of and with the consent of the child's parent or custodian who has been fully informed regarding the child's right to a prompt detention hearing, his right to counsel including appointed counsel if he cannot afford counsel, and his privilege against self-incrimination."

**2.** The rule with respect to admissibility of a child's extrajudicial statement first appeared when Code, Chapter 49 was amended in 1977. W.Va.Code, 49–5–1(d) (1977), read, in pertinent part: "Extrajudicial statements other than res gestae statements by a child made to law enforcement officials or while in custody and outside the presence of the child's counsel shall not be admissible."

under Syllabus Point 1 of *State v. Johnson*, 159 W.Va. 682, 226 S.E.2d 442 (1976), *overruled on other grounds, State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981).[3]

We reaffirm the conclusion reached in *Howerton* that the language in W.Va.Code, 49–5–1(d), "[e]xtrajudicial statements other than res gestae by a child under sixteen years of age but above the age of thirteen to law-enforcement officers or while in custody, shall not be admissible unless made in the presence of counsel or made in the presence of and with the consent of the child's parent or custodian," does not apply to an extrajudicial statement made by a juvenile who is sixteen years of age or older.

## II.

The second challenge to the admissibility of the juveniles' statements is that their waivers of *Miranda* rights, specifically the right to remain silent and the right to have a lawyer present during questioning, were ineffective. The juveniles rely on Syllabus Point 1 of *State ex rel. J.M. v. Taylor*, 166 W.Va. 511, 276 S.E.2d 199, 25 A.L.R.4th 1063 (1981): "A juvenile defendant cannot waive his right to counsel during proceedings against him, unless he does so upon advice of counsel."

In *State v. Manns*, 174 W.Va. 793, 798, 329 S.E.2d 865, 870 (1985), we rejected this argument and stated that *Taylor* involved a juvenile's ability to waive his right to counsel at a juvenile hearing and this "must be distinguished from the capacity of a juvenile to give a voluntary confession as discussed in [*State v.*] *Laws* [162 W.Va. 359, 251 S.E.2d 769 (1978) ]." A reading of *Taylor* discloses that there was no mention

made of *Laws* where we set in Syllabus Point 1 the rule that a juvenile's confession is tested by the totality of the circumstances.[4] The rule in *Laws* is consistent with *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979), and a majority of other jurisdictions.

In *Howerton*, we modified Syllabus Point 1 of *Laws* because it had decided the validity of a confession taken prior to the time that the age restrictions were inserted in W.Va.Code, 49–5–1(d). Syllabus Point 3 of *Howerton* provides:

" '[Subject to the provisions of W.Va. Code, 49–5–1(d),] [t]here is no constitutional impediment which prevents a minor above the age of tender years solely by virtue of his minority from executing an effective waiver of rights; however, such waiver must be closely scrutinized under the totality of the circumstances.' Syllabus Point 1, as modified, *State v. Laws*, 162 W.Va. 359, 251 S.E.2d 769 (1978)."

*See also* Syllabus Point 1, *State v. Ellsworth J.R.*, 175 W.Va. 64, 331 S.E.2d 503 (1985).

Thus, it is clear that the validity of a juvenile's confession is tested by the *Howerton-Laws* rule and not by the principles in *Taylor*. Because both of the juveniles in this case were over sixteen years of age, the requirements of W.Va.Code, 49–5–1(d), were not applicable. Their confessions are tested by the totality of the circumstances under which they were taken.

## III.

As a separate ground, Mark E.P. contends that his right to counsel under W.Va. Code, 49–5–1(c) (1982), was violated.[5]

"There is no constitutional impediment which prevents a minor above the age of tender. years solely by virtue of his minority from executing an effective waiver of rights; however, such waiver must be closely scrutinized under the totality of the circumstances."

---

**3.** Syllabus Point 1 of *Johnson* states:

"A spontaneous statement by a defendant made prior to any action by a police officer and before an accusation, arrest or any custodial interrogation is made or undertaken by the police may be admitted into evidence without the voluntariness thereof first having been determined in an *in camera* hearing."

**4.** Syllabus Point 1 of *Laws* states:

**5.** W.Va.Code, 49–5–1(c) (1982), provides, in pertinent part: "The child shall have the right to be effectively represented by counsel at all stages

Mark E.P.'s reliance on this statute is misplaced.

■ This provision must be read with the subsequent subsection, W.Va.Code, 49–5–1(d), which deals with the procedure for taking a juvenile's confession. It authorizes the taking of a confession without the presence of counsel or parents when a juvenile is age sixteen or older.[6] The detailed procedures relating to the taking of a confession in W.Va.Code, 49–5–1(d), take primacy over the general language in W.Va. Code, 49–5–1(c).[7] This result rests on the rule of statutory construction that a specific statute should be given preference over a general statute relating to the same subject matter where the two provisions appear to conflict. Syllabus Point 1, *UMWA v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984). *See also State ex rel. Sahley v. Thompson*, 151 W.Va. 336, 340, 151 S.E.2d 870, 872 (1966), *overruled on other grounds, State ex rel. Hill v. Smith*, 172 W.Va. 413, 305 S.E.2d 771 (1983).

We find that the requirements of W.Va. Code, 49–5–1(c), relating to the right of a juvenile "to be effectively represented by counsel at all stages of proceedings under the provisions of this article" does not relate to the taking of the juvenile's extrajudicial statement as this is controlled by W.Va.Code, 49–5–1(d), and the totality of the circumstances test set out in *Laws*.

### IV.

The juveniles contend that the totality of the circumstances, which include their race, their youth, their lack of experience with law enforcement operations and procedures, and the location of the interrogation, add up to such duress and coercion that the statements cannot be deemed voluntary.

In *Laws*, 162 W.Va. at 362, 251 S.E.2d at 772, when we adopted this standard, we recognized "that juvenile rights should be guarded with a greater zeal than adult rights to insure that confessions are not the result of adolescence, fear or fantasy." The factors to be examined in a "totality of the circumstances" evaluation of a juvenile confession were set out in *Laws*, 162 W.Va. at 363, 251 S.E.2d at 772, and include:

"1) age of the accused; 2) education of the accused; 3) knowledge of the accused as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and remain silent; 4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; 5) whether the accused was interrogated before or after formal charges had been filed; 6) methods used in interrogation; 7) length of interrogations; 8) whether vel non the accused refused to voluntarily give statements on prior occasions; and 9) whether the accused has repudiated an extra judicial statement at a later date. *West v. United States*, 399 F.2d 467 at 469 (5th Cir.1968). *See also, State in Interest of Dino*, — La. —, at —, 359 So.2d 586 at 591 (1978)."

The United States Supreme Court's guidelines in *Fare v. Michael C.*, 442 U.S. at 725, 99 S.Ct. at 2572, 61 L.Ed.2d at 212, are similar: "the juvenile's age, experience, education, background, and intelligence, and ... whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights."

■ We held in Syllabus Point 6 of *In the Interest of Moss*, 170 W.Va. 543, 295 S.E.2d 33 (1982), that a court in a transfer hearing is obliged to hear evidence pertain-

---

of proceedings under the provisions of this article."

**6.** For the language of W.Va.Code, 49–5–1(d), *see* note 1, *supra*.

**7.** John A.L. contends that no interrogation should have taken place because the police officers who had him in custody knew that a lawyer had been summoned by his guardian. It is not necessary for us to decide whether such

circumstances are tantamount to a request for counsel that would prohibit interrogation, *State v. McNeal*, 162 W.Va. 550, 554–55, 251 S.E.2d 484, 487 (1978); *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 723, 10 A.L.R.3d 974, 1011 (1966), because there is no evidence to support John A.L.'s allegation. Detective Helton's uncontradicted testimony was that John A.L.'s guardian told him she had a telephone call to make, but that she was not going to call a lawyer.

ing to the voluntariness of a juvenile's confession prior to allowing it to be introduced against the juvenile for the purpose of proving probable cause:

"At a transfer hearing, the court must determine the validity of a confession before allowing it to be used against the accused."

The standard for reviewing the trial court's decision regarding the voluntariness of a confession is found in Syllabus Point 3 of *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978):

"A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence."

■ After hearing the evidence, the court found the waivers of *Miranda* rights were knowing and intelligent, and that the statements were voluntarily given. We find no error in this ruling because there was insufficient evidence to demonstrate under the totality of the circumstances, that the confessions were involuntary. There is nothing in the record to suggest that the juveniles were mentally deficient. Both were sixteen years old which is two years below the age of majority. No claim is made that there was any coercion involved in the interrogation. Written waivers of *Miranda* rights were signed by each juvenile. They were both informed of the nature of the charge prior to interrogation and the interrogation itself was not unduly prolonged.

Mark E.P. signed a written confession which contained an acknowledgment that he had read the same. At the transfer hearing, he stated that some portion of the confession was inaccurate, but this was never specifically identified. John A.L. did not sign a written statement because a lawyer arrived and advised him not to answer any further questions. At the time Mark E.P. was arrested, he was asked if he wished to call his parents, but he declined to do so. John A.L. was arrested in the presence of his great-grandmother with whom he lived.

## V.

The juveniles' final common ground for challenging the admissibility of their statements is that their rights under W.Va. Code, 49–5–8(d) (1982), were violated.[8]

Mark E.P. contends that he was in custody within the meaning of W.Va.Code, 49–5–8(d), and was therefore subject to its protections. He argues that his statement should have been ruled inadmissible because of the failure of the police, upon taking him into custody, to immediately take him to a referee, judge or magistrate. John A.L. makes the same contention and points out that he was arrested pursuant to an arrest warrant and that the mandate of W.Va.Code, 49–5–8(d), applies with even more force.

We have recently addressed the requirement in W.Va.Code, 49–5–8(d), that "a child in custody must immediately be taken" before a judicial officer in *State v. Ellsworth J.R., supra*. We compared the language of W.Va.Code, 49–5–8(d), with W.Va.Code, 62–1–5, which requires that an adult who is arrested shall be taken "without unnecessary delay before a magistrate," and observed that this language was less stringent. In *Ellsworth J.R.*, we stated that in *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982), we held in Syllabus Point 6 that a delay in taking an adult defendant to a magistrate where such delay was primarily for the purpose of obtaining a confession may vitiate the confession.[9] Furthermore, we pointed out in *Ellsworth J.R.* that W.Va.Code, 49–5A–2, relating to arrested juveniles, requires that they "shall

---

8. W.Va.Code, 49–5–8(d) (1982), provides:
   "A child in custody must immediately be taken before a referee or judge of the circuit court and in no event shall a delay exceed the next succeeding judicial day: Provided, that if there be no judge or referee then available in the county, then such child shall be taken immediately before any magistrate in the county for the sole purpose of holding a de-

tention hearing. The judge, referee or magistrate shall inform the child of his right to remain silent, that any statement may be used against him and of his right to counsel, and no interrogation shall be made without the presence of a parent or counsel."

9. Syllabus Point 6 of *Persinger* states: "The delay in taking the defendant to a magistrate may be a critical factor where it appears that the

be forthwith afforded a hearing to ascertain if such child shall be further detained." This language reinforced the immediacy language in W.Va.Code, 49–5–8(d).

▮▮▮ We also analyzed the term "custody" as used in W.Va.Code, 49–5–8(d), and determined that it "is equivalent to an arrest, that is, it must be based upon probable cause where the juvenile is being taken into custody for an act which if committed by an adult would be a crime." *State v. Ellsworth J.R.*, 175 W.Va. at 69–70, 331 S.E.2d at 508. Our conclusion was stated in Syllabus Point 3 of *Ellsworth J.R.*:

"Under W.Va.Code, 49–5–8(d), when a juvenile is taken into custody, he must immediately be taken before a referee, circuit judge, or magistrate. If there is a failure to do so, any confession obtained as a result of the delay will be invalid where it appears that the primary purpose of the delay was to obtain a confession from the juvenile."

We found both the initial oral confession and the subsequent written confession in *Ellsworth J.R.* to be valid and not in violation of the provisions of W.Va.Code, 49–5–8(d). The subsequent written confession was validated on the legal principle that where an oral confession is given, the time taken to reduce the oral confession to writing is not ordinarily counted on the issue of whether there was an unreasonable delay in presenting the defendant to a magistrate.[10]

▮▮▮ Finally, in *Ellsworth J.R.*, 175 W.Va. at 509–510, 331 S.E.2d at 509–10, we also commented on the issue that even though the police have no probable cause to make an arrest when they request the juvenile to accompany them in order to question him, a confession obtained can be invalid:

"Even if we were to accept the State's argument that there was no probable

cause for the juvenile's arrest and he had agreed to accompany the police to the station, a written confession taken under these circumstances would not necessarily be valid. The validity of such a confession, independent of the age restrictions in W.Va.Code, 49–5–1(d), will turn on the custodial circumstances as we have outlined in *State v. Stanley*, 168 W.Va. 294, 284 S.E.2d 367 (1981). In *Stanley*, we followed *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and concluded that where a suspect is not free to leave the officer's place of questioning, then an illegal detention has occurred and a confession obtained under such circumstances, even though preceded by *Miranda* warnings, would be invalid unless there was a break in the causal connection between the illegal detention and the confession." (Citations omitted).

It is against these principles set out in *Ellsworth J.R.* that the confessions in this case must be tested with regard to W.Va. Code, 49–5–8(d). We are hampered, however, by the lack of a developed factual record that enables us to make a specific analysis of the *Ellsworth J.R.* standards.

▮▮▮ In the case of Mark E.P., it appears that at the time he was asked to accompany the police to the station for questioning, they did not have probable cause for his arrest. However, the record does not disclose under what circumstances the questioning occurred and in particular whether he was free to leave as we have outlined in *State v. Stanley*, 168 W.Va. 294, 284 S.E.2d 367 (1981).[11] *See also State v. Mays*, 172 W.Va. 486, 307 S.E.2d 655 (1983); *State v. Sprouse*, 171 W.Va. 58, 297 S.E.2d 833 (1982). We are, therefore, unable to determine whether Mark E.P.'s confession was the product of an illegal arrest. On remand, this issue must be

primary purpose of the delay was to obtain a confession from the defendant."

**10.** *See, e.g., State v. Mitter*, 169 W.Va. 652, 658, 289 S.E.2d 457, 461 (1982); *United States v. Candella*, 469 F.2d 173, 175–76 (2d Cir.1972); *Lewis v. State*, 285 Md. 705, 718, 404 A.2d 1073, 1080 (1979); *State v. Reynolds*, 298 N.C. 380, 399, 259 S.E.2d 843, 854 (1979), *cert. denied*, 446 U.S. 941, 100 S.Ct. 2164, 64 L.Ed.2d 795 (1980);

*Commonwealth v. Penn*, 497 Pa. 232, 239–40, 439 A.2d 1154, 1158, *cert. denied*, 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982); *Richmond v. State*, 554 P.2d 1217, 1229 (Wyo.1976); Annot., 28 A.L.R.4th 1121 (1984).

**11.** Syllabus Points 1 and 2 of *Stanley* state:
"1. Where police, lacking probable cause to arrest, ask suspects to accompany them to police headquarters and then interrogate

resolved before the statement can be used against Mark E.P. for the purpose of transfer.

■ With regard to the confession of John A.L., it was given after he was arrested pursuant to a warrant. The only reason offered for not taking him directly to a magistrate or other judicial officer is that he was brought to the police station for processing. His first statement while in custody was exculpatory, and he was told by the interrogating officer that nobody would believe it. After these remarks, the second incriminating statement was obtained. The record does not reveal how long he was in custody from the time of his arrest to the time he was taken to the magistrate in Princeton. Because of the lack of an adequate record, we do not make an ultimate decision on John A.L.'s confession.

■ In our prior decisions, we have recognized that where there are substantial defects in the transfer hearing that go to the validity of the probable cause finding, we will reverse and remand the case for a further transfer hearing. Double jeopardy principles are not involved because a transfer hearing does not involve an adjudication of guilt. *See Breed v. Jones*, 421 U.S. 519, 538 n. 18, 95 S.Ct. 1779, 1790 n. 18, 44 L.Ed.2d 346, 360 n. 18 (1975). These principles were set out in *In the Interest of S.M.P.*, 168 W.Va. 626, 630, 285 S.E.2d 408, 410 (1981):

> "Although the transfer order must be reversed, we do note that the State is not precluded by this decision from introducing additional evidence on remand to establish probable cause. There is no double jeopardy problem with introducing additional evidence on the issue of probable cause because a transfer proceeding is not for the purpose of adjudicating guilt or innocence. Syl. pt. 3, *State ex rel. Smith v. Scott*, [160 W.Va. 730], 238 S.E.2d 223 (1977); *W.Va.Code*, 49-5-10(b). So long as the transfer proceed-

ing is conducted prior to the adjudicatory hearing on the merits, no double jeopardy problem is presented. *Breed v. Jones*, 421 U.S. 519, 538 n. 18, 95 S.Ct. 1779, 1790, 44 L.Ed.2d 346, 360 (1975)."

*See also State ex rel. E.D. v. Aldredge*, 162 W.Va. 20, 245 S.E.2d 849 (1978).

For the foregoing reasons, we reverse the transfer orders and remand these cases for further proceedings consistent with this opinion.

Reversed and Remanded.

them intermittently for seven hours during which time they are not free to leave or their liberty is restrained, the police have violated the Fourth Amendment.

"2. A confession obtained by exploitation of an illegal arrest is inadmissible. The giving of *Miranda* warnings is not enough, by itself, to break the causal connection between

an illegal arrest and the confession. In considering whether the confession is a result of the exploitation of an illegal arrest, the court should consider the temporal proximity of the arrest and confession; the presence or absence of intervening circumstances in addition to the *Miranda* warnings; and the purpose or flagrancy of the official misconduct."