442 S.E.2d 717

**In the Matter of STEPHFON W., A Child Under 18 Years of Age, and Betty B., Parent or Custodian of Said Child, Appellants.**

**In the Matter of GEORGE ANTHONY W., A Child Under 18 Years of Age, and Joanne O., Parent or Custodian of Said Child, Appellant.**

**Nos. 21861, 21862.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 8, 1994.

Decided March 25, 1994.

Michael F. Niggemyer, Fairmont, Frances C. Whiteman, Fairmont, for appellants in No. 21861.

D.J. Romino, II, D. Conrad Gall, Fairmont, for appellants in No. 21862.

G. Richard Bunner, Pros. Atty. of Marion County, James H. Hearst, First Asst. Pros. Atty. of Marion County, Fairmont, for State of West Virginia.

MILLER, Justice:

We consolidated these two appeals because they involve a common issue in connection with a juvenile transfer hearing under W.Va. Code, 49–5–10 (1978).[1] The issue is whether the State may rely solely on the evidence it introduced at the preliminary hearing and foreclose the defense from introducing evidence at the subsequent transfer hearing. We determine that this may not be done.

The Circuit Court of Marion County, by order dated January 20, 1993, transferred Stephfon W. and George Anthony W., from juvenile jurisdiction to adult criminal jurisdiction. The defendants are charged with first degree murder.

## I.

The facts surrounding the criminal charges are as follows. Ralph Minor found his sister, Dortha Minor, dead in her Fairmont home on November 23, 1992. Ms. Minor's death was believed to be a homicide according to the Fairmont City Police who conducted the investigation. Several suspects and possible witnesses were questioned, including Stephfon W. He was in juvenile court on another charge and also was detained on a capias warrant. During the initial questioning at the courthouse, Stephfon allegedly stated that George Anthony W. murdered Ms. Minor. Police later brought George Anthony to the police station for questioning. He allegedly told the police that he attacked Ms. Minor and that Stephfon was an active participant in the murder. When confronted with this information, Stephfon admitted his active participation in the murder to the police. Inculpatory statements were taken from both juveniles.

Both juveniles were appointed separate counsel and the circuit court held a combined preliminary hearing for them on December 4, 1992. During this hearing, the State introduced the juveniles' confessions and additional testimony was given by the investigating officer as to the circumstances surrounding the confessions as well as other corroborating evidence. Counsel for the juveniles did not offer any evidence, but did cross-examine the State's witnesses.

At the preliminary hearing, the State submitted proposed findings of fact and conclusions of law. Counsel for the juveniles ob-

1. W.Va.Code, 49–5–10(a), provides, in relevant part:
   "Upon written motion of the prosecuting attorney filed at least eight days prior to the adjudicatory hearing and with reasonable notice to the child, the parents, guardians, or custodians of the child, and the child's counsel, the court shall conduct a hearing to determine if juvenile jurisdiction should be waived and the proceeding should be transferred to the criminal jurisdiction of the court."

jected to the findings and conclusions relative to the voluntariness of the confessions. Thereafter, the circuit court entered pretrial orders in both cases. These orders basically incorporated the findings of fact and conclusions of law that had been proposed by the prosecuting attorney. Both orders found probable cause that the juveniles committed first degree murder and also found their confessions to be voluntary. Objections by counsel were preserved in the orders.

On December 16, 1992, the circuit court held a combined transfer hearing on the juveniles. Defense counsel moved for a continuance based on the fact that they needed more time to prepare evidence regarding the involuntariness of the juveniles' confessions. They also sought to obtain the transcript of the preliminary hearing. The motion for continuance was denied.

At the urging of the prosecuting attorney, the circuit court accepted the probable cause findings of fact and conclusions of law made at the preliminary hearing. Over objections by defense counsel, the trial court ordered the juveniles transferred to adult criminal jurisdiction.

## II.

■ There are critical distinctions between a preliminary hearing in a juvenile proceeding and a hearing whereby the juvenile court waives its jurisdiction and transfers a juvenile to adult criminal jurisdiction. The primary purpose of a preliminary hearing under W.Va.Code, 49–5–9 (1982), is to require the State to prove "there is probable cause to believe that the child is a delinquent child." W.Va.Code, 49–5–9(a)(3). This hearing is the first opportunity for the juvenile, who now must have counsel, to challenge the validity of his arrest.[2]

■ Moreover, there is no requirement in the juvenile preliminary hearing statute, W.Va.Code, 49–5–9, that the juvenile offer any evidence or even contest the evidence of probable cause. It is the State's burden to prove that probable cause exists. If the juvenile wishes, he may testify, cross-examine the State's witnesses, or offer evidence on his own behalf. See W.Va.Code, 49–5–1(d) (1982).[3] This preliminary hearing is analogous to the preliminary examination before a magistrate for an adult defendant under Rule 5.1 of the West Virginia Rules of Criminal Procedure. See State v. Haught, 179 W.Va. 557, 371 S.E.2d 54 (1988); Desper v. State, 173 W.Va. 494, 318 S.E.2d 437 (1984).

■ The transfer of a juvenile to adult criminal jurisdiction under W.Va.Code, 49–5–10, is a matter of substantially more gravity. If the transfer is made, the juvenile loses the beneficial protection of our juvenile laws and is treated the same as an adult criminal. We outlined the protections afforded a juvenile at a transfer hearing in In re E.H., 166 W.Va. 615, 623–24, 276 S.E.2d 557, 563 (1981):

"Moreover, the [juvenile] transfer statute, W.Va.Code, 49–5–10 (1978), and W.Va. Code, 49–5–1 (1978), which contains general provisions regarding hearing rights, as well as State v. McArdle, 156 W.Va. 409, 194 S.E.2d 174 (1973), [modified on other grounds, State v. Hatfield, 169 W.Va. 191, 286 S.E.2d 402 (1982) ], provide substantial due process rights that must be accorded a juvenile at a transfer hearing, including: (1) an advance written notice of the grounds relied upon for transfer; (2) an opportunity to be heard in person and to present witnesses and evidence; (3) the right to confront and cross-examine adverse witnesses; (4) a neutral hearing officer; (5) the right to have counsel present

against him and of his right to counsel.... If the child or his parent, guardian or custodian has not retained counsel, counsel shall be appointed as soon as practicable."

---

2. W.Va.Code, 49–5–8 (1982), covers the procedures for taking a juvenile into custody and for the detention hearing, which is the first judicial hearing. The detention hearing is required to be held immediately after a juvenile is taken into custody. Under W.Va.Code, 49–5–8(d), "[t]he sole mandatory issue at the detention hearing shall be whether the child shall be detained pending further court proceedings." It also provides that at the detention hearing, the presiding official "shall inform the child of his right to remain silent, that any statement may be used

3. W.Va.Code, 49–5–1(d), states, in pertinent part: "In all proceedings under this article, the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses."

including court-appointed counsel if indigent; (6) a record of the evidence of the hearing; (7) findings of fact and conclusions of law upon which the transfer decision is based; and (8) a right of direct appeal to this Court." [4]

■ Moreover, we consistently have required that at a transfer hearing, the circuit court must make an independent determination of whether there is probable cause. As we stated in Syllabus Point 4 of *In the Interest of Moss,* 170 W.Va. 543, 295 S.E.2d 33 (1982):

> " 'W.Va.Code § 49–5–10(d) [1978] requires that the circuit court make an independent determination of whether there is probable cause to believe that a juvenile has committed one of the crimes specified for transferring the proceeding to criminal jurisdiction.' Syllabus, *In the Interest of Clark,* 168 W.Va. 493, 285 S.E.2d 369 (1981)."

*See also State v. Largent,* 172 W.Va. 281, 304 S.E.2d 868 (1983).

■ A further indication of the solemnity of a transfer hearing is the requirement contained in Syllabus Point 3 of *Moss:*

> "The probable cause determination at a juvenile transfer hearing may not be based entirely on hearsay evidence."

In *State v. Beaman,* 181 W.Va. 614, 383 S.E.2d 796 (1989), *overruled, in part, on other grounds, E.B. v. Canterbury,* 183 W.Va. 197, 394 S.E.2d 892 (1990), we rejected the contention that an indictment returned against a juvenile was sufficient evidence to establish probable cause at a transfer hearing.[5]

■ This case is similar to the case of *In the Interest of Clark,* 168 W.Va. 493, 285 S.E.2d 369 (1981), where the court held the transfer hearing and took testimony from the juvenile referee. His testimony was that he conducted the preliminary hearing for the juvenile and found probable cause that the juvenile had committed the murder. A police officer testified that he investigated the murder and brought charges against the juvenile. We found this independent determination to be insufficient to show probable cause.

We do not agree with the State's argument that the fact that the circuit judge heard the matters presented at the preliminary hearing and made findings of fact and conclusions of law was sufficient to comply with the transfer hearing requirements. To allow such a result would destroy the concept of an independent examination of probable cause at a transfer hearing. Moreover, it would violate the juvenile's right to be heard, right to present witnesses, and right to confront and cross-examine adverse witnesses, all of which are due process rights required at a transfer hearing, as we have indicated earlier.

What needs to be emphasized is that a transfer hearing is a separate and distinct proceeding from a preliminary hearing. W.Va.Code, 49–5–10(d), requires that the State must establish probable cause at the transfer hearing: "The court may, upon con-

---

4. W.Va.Code, 49–5–10(a), provides for advance written notice of the grounds relied on for transfer to be given the juvenile. W.Va.Code, 49–5–1(d), gives the right in all juvenile proceedings for a "meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." The neutral hearing officer is a fundamental due process right. *See* Syllabus Point 5, *State v. Brown,* 177 W.Va. 633, 355 S.E.2d 614 (1987); Code of Judicial Conduct Canon 3C(1) (1993). The right to counsel is contained in W.Va.Code, 49–5–1(c). The right to a record of the evidence in a transfer proceeding and the requirement of findings of fact and conclusions of law are contained in W.Va.Code, 49–5–1(d). The requirement for findings of fact and conclusions of law at a transfer hearing also is found in W.Va.Code, 49–5–10(e). The right to a direct appeal in a trans-

fer hearing is contained in W.Va.Code, 49–5–10(f). Many of these rights are constitutionally required as the United States Supreme Court recognized in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). *See also State ex rel. Smith v. Scott,* 160 W.Va. 730, 238 S.E.2d 223 (1977); *State v. McArdle,* 156 W.Va. 409, 194 S.E.2d 174 (1973), *modified on other grounds, State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982).

5. The Syllabus of *State v. Beaman, supra,* is: "The return of an indictment against a juvenile defendant, while establishing probable cause, does not provide the necessary facts upon which the juvenile court should base its decision as to the propriety of transfer, and it does not preclude the defendant's right to a transfer hearing."

sideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction *if there is a probable cause to believe that:* [One of the following enumerated crimes was committed]." (Emphasis added).

■ Moreover, as this section also states, the judge at the transfer hearing is required to consider the juvenile's mental, physical, and emotional conditions. As we outlined in Syllabus Point 4 of *State v. Gary F.*, 189 W.Va. 523, 432 S.E.2d 793 (1993):

" ' "Before transfer of a juvenile to criminal court, a juvenile court judge must make a careful, detailed analysis into the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and other similar personal factors. *W.Va.Code*, 49–5–10(d)." Syl. Pt. 4, *State v. C.J.S.*, 164 W.Va. 473, 263 S.E.2d 899 (1980), *overruled in part on other grounds [in] State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980) and *State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610 (1981).' Syl. Pt. 2, *State v. Sonja B.*, 183 W.Va. 380, 395 S.E.2d 803 (1990)." [6]

■ For the foregoing reasons, we conclude that the State may not rely on the evidentiary transcript of the preliminary hearing or the findings of fact and conclusions of law made at such hearing to establish probable cause at the transfer hearing.[7]

■ We also conclude for the same reason that the circuit court erred in utilizing its findings from the preliminary hearing to determine the confessions were voluntary. This action denied the juveniles their right of cross-examination and their right to testify

and present evidence on this issue at the transfer hearing. We consistently have held that if a confession is to be used at a transfer hearing, its voluntariness must be determined at that time. As we stated in Syllabus Point 4 of *Matter of Mark E.P.*, 175 W.Va. 83, 331 S.E.2d 813 (1985):

" 'At a transfer hearing, the court must determine the validity of a confession before allowing it to be used against the accused.' Syllabus Point 6, *In the Interest of Moss*, 170 W.Va. 543, 295 S.E.2d 33 (1982)."

For the foregoing reasons, we reverse the order of the circuit court and remand these cases for a new transfer hearing.

Reversed and remanded.

NEELY, Justice, dissenting:

Both Mr. S.W. and Mr. G.A.W. were given ample opportunity to consult with family members; both were afforded the opportunity to enlist the aid of a lawyer; both were read their juvenile rights and *Miranda* rights; both, with their parents, signalled their full understanding of such rights and signed knowing and voluntary waivers. Both, accompanied by their parents and relatives, confessed to the homicide and each implicated the other. On the request of the police, both voluntarily took officers to the areas where items of evidence were thrown. Both, after thorough discussions with their lawyers, opted to waive detention hearings. Nowhere is there evidence of threats, promises, illegal or improper inducements or any other form of coercion exerted on either Mr. S.W. or Mr. G.A.W. to make such confessions.

Based on this testimony, the State submitted its proposed probable cause findings of

---

**6.** A recognized exception to this rule is contained in Syllabus Point 2 of *State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610 (1981):

"When a court finds that there is probable cause to believe that a juvenile has committed one of the crimes specified in *W.Va.Code*, 49–5–10(d)(1) (treason, murder, robbery involving the use of or presenting of deadly weapons, kidnapping, first-degree arson, and first-degree sexual assault), the court may transfer the juvenile to the court's criminal jurisdiction without further inquiry. To the extent this holding is

inconsistent with *State v. R.H.*, 166 W.Va. 280, 273 S.E.2d 578 (1980) and *State v. C.J.S.*, 164 W.Va. 473, 263 S.E.2d 899 (1980), those cases are overruled."

**7.** There may be an occasion where a witness who testified at a preliminary hearing is unavailable at the transfer hearing. If the requirements of Rule 804(b)(1) of the West Virginia Rules of Evidence are met, the former testimony may be admitted.

fact and conclusions of law at the beginning of the preliminary hearing. The State presented evidence concerning the voluntariness of the statements and the validity of the confessions, calling six witnesses and introducing five exhibits into evidence. Armed with copies of all police reports, waivers, audio tapes of the accuseds' and the witness' statements, confessions and video tapes of the homicide scene available to and provided by the State, defense counsel then subjected these witnesses to extensive cross-examination on all the issues presented, including the rights of the accused and the voluntariness of the statements. Based on this evidence and testimony, the court found probable cause that the juveniles had committed the offense of first-degree murder in unlawfully, feloniously, intentionally, willfully, maliciously, deliberately and premeditatedly killing Mrs. Minor.

To urge, as the majority does, that Judge Merrifield make an "independent determination" of his own preliminary hearing findings of fact and conclusions of law is not only redundant and flagrantly inefficient; it also amplifies the plethora of procedural *punctiliones* that are paralyzing the truth-finding functions of courts in criminal cases.

In the late 1960s, courts embarked upon an ambitious program to advance civil liberties through criminal procedure. This strategy might have worked if simultaneously there had not been the beginnings of a relentless rise in the overall level of savagery in this country. Thus, court efforts to use criminal procedure to control ignorant and brutal police, corrupt prosecutors and arrogant and class-biased courts actually backfired; procedural niceties in furtherance of civil liberties caused the average person—including the average judge and the average lawyer—to become extraordinarily impatient about *any* procedural technicality. In other words, to release an axe murderer who will certainly kill again and again simply because a proper search warrant was not executed to find the axe stashed in his refrigerator so confounded the public's legitimate expectations that the government will protect them that all so-called "technicalities" in criminal law came to be held up to ridicule.

When we begin to use "procedural technicalities" as a tool to achieve results motivated by political inclinations, it sours everyone on procedural rules that *do*, however, contribute to the truth-finding functions of courts—for example, the rules limiting hearsay, the rules setting minimum standards on the qualifications of expert witnesses, and the legitimacy of certain types of scientific evidence. If a pamrockwellization of the law is to be avoided, *see State v. Delaney*, 187 W.Va. 212, 218, 417 S.E.2d 903, 909 (Neely, J., dissenting), we must distinguish between procedural niceties that strangle truth-finding to advance political agendas from procedural niceties that contribute to and enhance truth finding.

In this case, the majority fails to make just such a distinction. Ignoring the almost incontrovertible evidence presented at the preliminary hearing that Mr. S.W. and Mr. G.A.W. committed deliberate pre-meditated cold-blooded murder of a kindly old woman, that their confessions to this murder were made with all procedural safeguards afforded them, and that the full-blown trial-like transfer hearing that the majority now demands has essentially already occurred, is of record, and is fully transcribed in the preliminary hearing, not only renders what the court orders today redundant and superfluous; it also makes courts look preposterous and adds more fuel to inflame the "get tough on crime" enthusiasts. In plucking from the air procedural technicalities that in this case can only be designed to vindicate the majority's denial reflex, to wit, that children *should* not have evil intent, the majority's decision is like the thirteenth chime of a ridiculous clock which is not only in and of itself absurd, but casts aspersions on the legitimacy of the other twelve.