295 S.E.2d 33

**In the Interest of John MOSS, Jr.**

**No. 15490.**

Supreme Court of Appeals of
West Virginia.

July 15, 1982.

Rehearing Denied Sept. 16, 1982.

McKittrick & Vaughan, Parrish McKittrick and Harry C. Taylor II, St. Albans, for Moss.

James E. Roark, Pros. Atty., Beverly S. Selby and Frances W. McCoy, Asst. Pros. Attys., Charleston, for State.

McGRAW, Justice:

In this appeal from a final order of the Circuit Court of Kanawha County, the appellant, John Moss, Jr., challenges the transfer of his case from the circuit court's juvenile jurisdiction to its criminal jurisdiction. The appellant raises numerous assignments of error which can be reduced to three grounds for appeal. The appellant contends that the circuit court erred in rulings on evidentiary matters at the preliminary and the transfer hearings, that the court erred in permitting the State to reopen the transfer hearing for the presentation of additional evidence, and that the State erred in presenting its case to the grand jury immediately before this appeal was filed. We find merit in several of the appellant's contentions and we reverse.

In December of 1979, a woman and her two children were found dead in their St. Albans home. Soon afterward, the deceased woman's husband became a suspect in the triple murder. He is alleged to have confessed to the crime and was subsequently indicted by the Kanawha County Grand Jury. The husband was held in custody for approximately eleven months awaiting trial, during which time his alleged confession was ruled admissible into evidence as voluntarily given. Trial was set for November 12, 1980.

The record indicates that the appellant was also a suspect in the murders and that his name was recited in the indictment of the accused husband. In January 1980, the investigating authorities traveled to Cleveland, Ohio, to obtain a blood sample from the appellant, who at the time was housed in a juvenile detention center on an unrelated charge, and to question him about the murders. The appellant denied committing the murders. A blood sample was taken, when, at the authorities' request, the appellant pricked his finger and dribbled blood on a cloth provided for this purpose.

At the time of this interrogation, the appellant was seventeen years of age. The blood sample was taken without a court order, and without the knowledge or consent of the appellant's parents. The authorities were aware that the appellant was a juvenile. They made no effort to contact the appellant's Ohio lawyer. The appellant was advised of his rights prior to questioning, but did not sign a waiver of rights form.

When the appellant's counsel learned of the blood sample taken by the West Virginia authorities, he objected, and an Ohio court ordered that the cloth on which the blood sample was deposited be returned to the appellant. This apparently was done. Subsequently, in April 1980, the investigating authorities again travelled to Cleveland to obtain a blood sample from the appellant, pursuant to an order issued by an Ohio court. A doctor performed the sampling. Analysis of the blood sample strengthened the investigating authorities' suspicions concerning the appellant's involvement in the murders.

On September 26, 1980, the State filed a detainer against the appellant, pursuant to W.Va.Code § 62–14–1 *et seq.* (1977 Replacement Vol.), based on a malicious wounding charge, unrelated to the homicides. The appellant at this time was serving a term of four to twenty-five years at the Ohio State Reformatory on charges of rape and attempted murder. On October 28, 1980, while being transported to West Virginia by members of the Department of Public Safety to answer the malicious wounding charge, the appellant confessed to having committed the homicides in Kanawha County. The appellant subsequently made a tape recorded confession after signing a waiver of his *Miranda* rights.

On November 2, 1980, a second detainer was filed by the State against the appellant based on a charge of three counts of murder in the first degree. On December 18, 1980, the appellant was again transported from the Ohio State Reformatory to the Kanawha County Jail. A preliminary hearing was set for December 24, 1980, but as a result of motions for continuance made by the defense, the hearing was not held until January 12, 1981. After the presentation of evidence, which included a replay of the appellant's taped confession, the juvenile referee made a finding of probable cause and referred the appellant to the juvenile jurisdiction of the Circuit Court of Kanawha County.

On January 20, 1981, the State filed a motion to have the appellant transferred to the criminal jurisdiction of the circuit court and tried as an adult. The transfer hearing was set for January 28, 1981. Defense counsel's motion for a continuance to allow for psychological and psychiatric testing and evaluation of the appellant was granted. Following subsequent motions for continuance on the part of defense counsel, the transfer hearing was held on June 29, 1981.

At the transfer hearing, the State presented testimony from a member of the appellant's family as to his background, testimony of school personnel as to the appellant's grades and behavior in school and testimony of the county's chief probation officer and a psychiatrist as to the appellant's prospects for rehabilitation. The State also introduced into evidence a transcript of the preliminary hearing which was stipulated by defense counsel to be a true and accurate reporting of that proceeding. The defense called as a witness one of the state troopers who investigated the murders and attempted to elicit from him testimony as to the adult who had previously been indicted for the crimes. The court at first overruled the State's objection to this testimony, but later sustained the objection on the ground that the matters upon which the defense sought the testimony, namely the confession of another individual to having committed the crimes in question, was a question which should properly be raised at trial and not at the transfer hearing. At the conclusion of the evidence the court took the issue of transfer under advisement.

Before any ruling on the transfer had issued, the State discovered that the transcript of the preliminary hearing did not contain a transcript of the appellant's tape recorded confession. Instead, the tape recording which had been played at the preliminary hearing had merely been incorporated by reference into the record. On July 9, 1981, the State filed with the circuit court a motion to reopen the transfer hearing for the purpose of introducing the confession into evidence. A hearing on the motion was held on August 6, 1981, at which time counsel for the appellant opposed reopening the transfer hearing. The court granted the State's motion and proceeded to allow the State to play the tape

recorded confession. At the conclusion of the hearing the court issued from the bench its decision that the appellant be transferred to the criminal jurisdiction of the court, and indicated that further proceedings would be stayed until counsel had an opportunity to file an appeal. The final order issued August 11, 1981, incorporated the court's conclusions but made no mention of the stay of proceedings.

On August 13, 1981, the State presented its case against the appellant to the grand jury, which returned an indictment charging the appellant with three counts of murder in the first degree. The following day counsel for the appellant filed a motion for a stay of further proceedings and a motion to quash the indictment. On August 20, 1981, the date set for a hearing on the defense motions, the appellant filed a notice of intent to appeal the court's decision to transfer the appellant to criminal jurisdiction and a request for a transcript. At the hearing conducted August 20, 1981, the court granted the stay of proceedings, but did not rule on the appellant's motion to quash the indictment. This Court subsequently granted the appellant's petition for appeal.

## I.

The appellant's first assignment of error is that both the juvenile referee at the preliminary hearing and the judge at the transfer hearing erred in refusing to allow the juvenile to present evidence that another individual committed the crimes with which the appellant was charged. Specifically, the appellant contends that he was not permitted to present direct testimony or to cross-examine the State's witnesses as to the confession and indictment of the other suspect. The State contends that the failure of the referee and the transfer judge to permit such testimony was not error because the only purpose of the two hearings was to determine whether probable cause existed.

■■■ The purpose of a preliminary hearing is to determine whether there is probable cause to believe the accused has committed the crime charged. Under the provisions of W.Va.Code § 49–5–10(d)(1) (1980 Replacement Vol.), a court may, after an adequate hearing, transfer a juvenile to criminal jurisdiction upon a finding that there is probable cause to believe that the child has committed one of the crimes enumerated therein.[1] In such circumstances a determination of probable cause is sufficient ground for transfer without further inquiry. *State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610 (1981).[2] We have previously discussed the quantum of evidence necessary to sustain a finding of probable cause at a transfer hearing. In *In re E.H.*, 166 W.Va. 615, 276 S.E.2d 557 (1981), we said that the probable cause standard is something less than clear and convincing proof.

Probable cause, as a standard of proof, is used at different stages of criminal and juvenile procedures. However, it is desir-

---

**1.** W.Va. Code § 49–5–10 provides in material part:

The court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is a probable cause to believe that:

The child has committed the crime of treason under section one [§ 61–1–1], article one, chapter sixty-one of this Code; the crime of murder under sections one, two and three [§§ 61–2–1, 61–2–2 and 61–2–3], article two, chapter sixty-one of this Code; the crime of robbery involving the use or presenting of firearms or other deadly weapons under section twelve [§ 61–2–12], article two, chapter sixty-one of this Code; the crime of kidnap-

ping under section fourteen-a [§ 61–2–14a], article two, chapter sixty-one of this Code; the crime of first degree arson under section one [§ 61–3–1], article three, chapter sixty-one of this Code; or charging sexual assault in the first degree under section three [§ 61–8B–3], article eight-B, chapter sixty-one of this Code, and in such case, the existence of such probable cause shall be sufficient grounds for transfer without further inquiry...

**2.** However, a transfer judge is not precluded from considering other factors bearing on the juvenile's rehabilitative prospects. Indeed, as we said in *Helms, supra*, consideration of personal factors which focus on the offender rather than the offense is a commendable practice which we heartily encourage.

able to have a single clearly articulated definition applicable to arrest, issuance of a warrant, preliminary examination, as well as juvenile transfer. In the context of arrest, we have held: "Probable cause ... exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that an offense has been committed." Syl. Pt. 1, *State v. Drake*, 170 W.Va. 167, 291 S.E.2d 484 (1982); Syl. Pt. 7, *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46 (1980); Syl. Pt. 3, *State v. Duvernoy*, 156 W.Va. 578, 195 S.E.2d 631 (1973); Syl. Pt. 1, *State v. Plantz*, 155 W.Va. 24, 180 S.E.2d 614 (1971). In *State v. Duvernoy*, *supra*, the Court added the caveat that an officer cannot without a warrant lawfully arrest one on a mere suspicion. Such does not meet the requirements of showing probable cause. *See also U. S. v. Henry*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

The following instructive discussion of the probable cause standard is found in *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), *cited in State v. Plantz*, 155 W.Va. at 35, 180 S.E.2d at 621:

In dealing with probable cause ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

"The substance of all the definitions" of probable cause "is a reasonable ground for belief of guilt." *McCarthy v. De Armit*, 99 Pa.St. 63, 69, quoted with approval in the *Carroll* opinion. 267 U.S. at 161 [, 45 S.Ct. at 288]. And this "means less than evidence which would justify condemnation" or conviction, as Marshall, C. J., said for the Court more than a century ago in *Locke v. United States*, 7 Cranch 339, 348 [3 L.Ed. 364]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162[, 45 S.Ct. 280, 288, 69 L.Ed. 543].

338 U.S. at 175–6, 69 S.Ct. at 1310–11.

Probable cause for the purpose of transfer of a juvenile to adult jurisdiction is therefore more than mere suspicion and less than clear and convincing proof. *In re E. H., supra.* Probable cause exists when the facts and circumstances as established by probative evidence are sufficient to warrant a prudent person in the belief that an offense has been committed and that the accused committed it.

The question raised by the appellant is whether the court erred in refusing to allow the defense to rebut the State's evidence of probable cause by showing that another individual confessed to having committed the crimes charged and was indicted therefor. The transfer judge refused to permit such testimony to be introduced on the ground that, although it would be admissible at trial as a defense on the ultimate question of the guilt of the accused, it was not relevant to the limited determination of probable cause.

 Certainly, the question of whether a person other than the accused committed the crime charged has a bearing on the determination of probable cause. The purpose of a probable cause hearing is to determine whether there is probable cause to believe that the accused committed the offense charged. The accused is entitled to rebut the State's proof of probable cause at a preliminary or transfer hearing by showing that he was not the person who committed the crime. However, merely showing that another person has been charged with the commission of the crime is not, in and of itself, sufficient to warrant a finding of no probable cause. As in a criminal trial, the accused must show that the evidence of the other person's guilt is inconsistent with the State's theory of probable cause against the accused. Of course, the

accused may not turn the preliminary or transfer hearing into an evidentiary battle on the ultimate issue of guilt or innocence by seeking to elicit such testimony. However, if the defense can rebut the State's proof of probable cause by showing that another person committed the crime, and such evidence shows that the defendant could not have committed the crime, such evidence should be admitted solely for a determination of probable cause. We therefore conclude that the court erred in restricting the appellant's evidence on this issue at the transfer hearing. The appellant is entitled to present evidence concerning another suspect's confession to the murders.

## II.

The appellant's second assignment of error is the admission at the original transfer hearing of the transcript of the preliminary hearing held on January 12, 1981. The transcript consisted solely of the testimony of Trooper Williams, who was the State's only witness at the preliminary hearing. Trooper Williams was not called as a witness at the first transfer hearing. However, the State did call the juvenile referee who conducted the preliminary hearing as a witness at the transfer hearing.

We can see no justifiable reason for the introduction of the transcript at the transfer hearing. There was no evidence introduced by the State to show that Trooper Williams, the only witness for the State at the preliminary hearing, was unavailable as a witness at the transfer hearing. Indeed, Trooper Williams did testify at the second, or reopened, transfer hearing. In the absence of any evidence to the contrary, we may infer that Trooper Williams was an available witness at the time of the original transfer hearing.

In *State v. R.H.*, 166 W.Va. 280, 273 S.E.2d 578, 586 (1980), we reiterated the rule in this jurisdiction concerning the admissibility of sworn testimony from a former trial or proceeding:

The well-settled rule in West Virginia is that sworn testimony taken from a former trial or proceeding is admissible if there is (1) an inability to obtain the testimony of the witness, (2) an opportunity to cross-examine the witness in the former proceeding, and (3) a substantial identity of parties and the issues. *State v. Dawson*, 129 W.Va. 279, 40 S.E.2d 306 (1946).

Where the witness is unavailable by reason of death or insanity or where the witness is beyond the scope of state process or where the whereabouts of the witness are unknown and cannot be discovered by diligent search or where the witness cannot remember, the prior testimony of the witness is admissible in a subsequent proceeding. *See State v. Spadafore*, 159 W.Va. 236, 220 S.E.2d 655 (1975); *State v. Dawson, supra; Show v. Mount Vernon Farm Dairy Products, Inc.*, 128 W.Va. 598, 37 S.E.2d 459 (1946); *State v. Sauls*, 97 W.Va. 184, 124 S.E. 670 (1924). Where the prior testimony is sought to be introduced on the ground that the witness's whereabouts are unknown, such evidence is not admissible unless it is shown that diligent efforts to secure the attendance of the witness were made unsuccessfully. *State v. Sauls, supra.*

This rule precludes admission of the transcript of the preliminary hearing absent some showing that the witness was unavailable.

The State asserts, however, that even if the transcript was inadmissible under the rules of evidence, its introduction did not constitute reversible error since "the failure to give strict adherence to the rules of evidence ... as required in a criminal trial will not be grounds for reversible error at a transfer hearing." *In re E.H., supra*, 166 W.Va. 627, 276 S.E.2d at 565.

We do not take this statement to preclude all evidentiary requirements at transfer hearings. Indeed, in other cases we have formulated some evidentiary requirements to be applied at transfer hearings. For example, in *State v. M.M.*, 163 W.Va. 235, 256 S.E.2d 549 (1979), we held that the rules of evidence relating to the introduction of expert testimony applied to transfer hearings. In *In the Interest of S.M.P.*, 168 W.Va. 626, 285 S.E.2d

408 (1981), we held that the probable cause determination at a juvenile transfer hearing may not be based entirely on hearsay evidence. Finally, we have the rule stated in *State v. R.H., supra,* regarding the admissibility of prior testimony.

In light of our decisions in these cases, we do not believe *In re E.H., supra,* calls for a total suspension of all rules of evidence at transfer hearings. Rather "there is a broader latitude on evidentiary matters, since it is assumed that a judge can weed out the extraneous from the relevant and because of his legal training will not be influenced by otherwise inadmissible evidence." *Id.,* 166 W.Va. at 627, 276 S.E.2d at 565.

■ We think the admission of the transcript of the preliminary hearing at this transfer hearing was reversible error, particularly in view of the fact that one of the purposes of its introduction appeared to be to establish that the juvenile referee had made a finding of probable cause. Indeed, the juvenile referee testified to this at the transfer hearing. "W.Va. Code § 49–5–10(d) [1978] requires that the circuit court make an independent determination of whether there is probable cause to believe that a juvenile has committed one of the crimes specified for transferring the proceeding to criminal jurisdiction." Syl., *In the Interest of Clark,* 168 W.Va. 493, 285 S.E.2d 369 (1981). In *Clark,* we found that testimony of a referee that he had previously found probable cause was merely conclusory and was not evidence on which a transfer judge may rely in making his or her independent determination. We are confronted with the same situation here.

We are reinforced in our conclusion by the fact that the transfer court apparently relied on the juvenile referee's findings at the preliminary hearing with respect to probable cause. Several times during the transfer hearing the judge referred to the referee's finding of probable cause in limiting defense counsel's examination. At one point, the judge stated "I have ruled that probable cause has been found by the juvenile referee for the purpose of transfer." While the court stated in the final transfer order that it had arrived at its finding of probable cause independently, there are no findings of facts in the transfer order to support this conclusion. Instead the court made conclusory statements that the State had sustained its burden, based on a "totality of the testimony" and that the court's probable cause finding was "independent of any findings heretofore made by the juvenile referee."

W.Va. Code § 49–5–10(e) provides:

> If, after a hearing, the court directs the transfer of any juvenile proceeding to criminal jurisdiction, it shall state on the record the findings of fact and conclusions of law upon which its decision is based or shall incorporate such findings of fact and conclusions of law in its order directing transfer.

Failure to set forth the findings and conclusions voids the transfer order. Syl. Pts. 2 and 3, *State ex rel. E.D. v. Aldredge,* 162 W.Va. 20, 245 S.E.2d 849 (1978).

In sum, we find that the prejudicial nature of the transcript of the preliminary hearing and the juvenile referee's testimony with respect to the finding of probable cause rendered their admission at the transfer hearing reversible error.

### III.

The appellant's next assignment of error is the transfer court's decision to reopen the transfer hearing upon request of the State. The reopening was requested as a result of this Court's decision in *State ex rel. Cook v. Helms, supra,* which the State read to require an independent determination of probable cause at the transfer hearing.[3] The purpose of the reopening was to permit the State to introduce the appellant's confession, the text of which had

---

**3.** The procedural requirement of an independent determination of probable cause by the judge presiding at the transfer hearing is rooted in the Due Process Clause, Art. 3, § 10, of our State Constitution and in Chapter 49 of the Code wherein the Legislature established preliminary hearings, W.Va. Code § 49–5–8 (1980 Replacement Vol.), and transfer hearings, W.Va. Code § 49–5–10 (1980 Replacement Vol.), as separate, yet meaningful proceedings. *See also In the Interest of Clark,* 168 W.Va. 493, 285 S.E.2d 369 (1981).

been inadvertently omitted from the preliminary hearing transcript.

"Whether a motion to reopen a case should be granted after the moving party has rested lies within the sound discretion of the court...." Syl. Pt. 3, *State v. Johnson*, 159 W.Va. 682, 226 S.E.2d 442 (1976). "It is within the sound discretion of the court in the furtherance of the interests of justice to .permit either party, after it has rested, to reopen the case for the purposes of offering further evidence and unless that discretion is abused the action of the trial court will not be disturbed." Syl. Pt. 4, *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666 (1974); *see also State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545 (1981). "The court is not justified in closing the case until all the evidence offered in good faith and necessary to the end of justice has been heard.... When in doubt, reopen." *State v. Daggett, supra*, 167 W.Va. at 423, 280 S.E.2d at 553. Reopening may be ordered on motion of either party. *State v. Fischer supra*, 158 W.Va. at 72–73, 211 S.E.2d at 667. The basic reason for denying a motion to reopen is to avoid unfair surprise to one of the parties. *Id.*

We cannot say in the instant case that the transfer judge abused his discretion in ordering the transfer hearing reopened. There was concern that the law governing probable cause determinations at transfer hearings had been modified by a decision of this Court. It would be senseless for a judge to ignore an appellate decision and simply wait for the pending case to go up on appeal, then come back on remand. This would effectively reopen the case, accomplishing the same purpose at greater expense of time and money.

In addition, after rendering his decision to reopen, the transfer judge offered to allow defense counsel a continuance in order to mitigate any effect of surprise or lack of adequate preparation. This offer was refused by defense counsel, even though he now argues on appeal that he was afforded inadequate notice of the motion to reopen and was not aware that evidence would be offered upon the court's granting of the motion. Clearly, if the appellant had been unfairly surprised by the reopening, he could have taken advantage of the transfer court's offer of more time. He rejected the opportunity to prepare further.

## IV.

The appellant next challenges the use of his confession at the transfer hearing. We find that the confession was not properly admitted at the hearing. The lower court should have made a finding on the record at the transfer hearing regarding the voluntariness, and thus admissibility, of the appellant's confession, just as a trial judge must hold an *in camera* voluntariness hearing when a confession is introduced in a criminal trial. *State v. Fortner*, 150 W.Va. 571, 148 S.E.2d 669 (1966); *State v. Smith*, 158 W.Va. 663, 212 S.E.2d 759 (1975); *State .v. Johnson*, 159 W.Va. 682, 226 S.E.2d 442 (1976). Such a hearing is required even in the absence of an objection to the introduction of the confession or in the absence of a request for a voluntariness hearing. *State v. Fortner, supra. Arthur v. McKenzie*, 161 W.Va. 747, 245 S.E.2d 852 (1978).

The purpose of holding an *in camera* hearing is to determine the question of voluntariness out of the presence of the jury. A second purpose which we discern is simply to make a determination of voluntariness. At a transfer hearing, where there is no jury and where the ultimate issue is probable cause, not guilt or innocence, the court must nevertheless determine the validity of a confession before allowing it to be used against the accused.

The state argues that under our holding in *State v. Trail*, 163 W.Va. 352, 255 S.E.2d 900 (1979) the admissibility of a confession is not reviewable on appeal from a transfer order. We note, however, that in *Trail*, the confession in question was not introduced into evidence at the transfer hearing and was therefore no part of the court's decision to transfer. That case is clearly distinguishable from the case at bar, in which the appellant's confession was the only piece of probative evidence introduced by the State to support a probable cause determination.

## V.

The appellant also assigns as error the introduction, over objection, of expert testimony at the first transfer hearing by a juvenile probation officer on the issue of the appellant's rehabilitative prospects. The appellant asserts that the probation officer was not qualified to give an expert opinion. The State argues that the probation officer's education and experience make him an expert, qualified to testify about juvenile rehabilitation, and that he had sufficient familiarity with the appellant's background to offer an expert opinion from reading his file and current psychological and psychiatric reports.

■ In Syllabus Point 1 of *State v. M.M.*, *supra*, we held: "Before a witness is qualified as an expert on the subject of juvenile rehabilitation, that witness must, through training, education or practical experience, possess significant skill and knowledge regarding the rehabilitation of juveniles." Moreover, the opinion of a properly qualified expert is not admissible at a transfer hearing unless a proper foundation is laid, either through the testimony of other witnesses or the exhibition of personal knowledge of the child's background. *Id.*

■ We conclude that the judge should not have considered the probation officer's testimony. His statement on direct examination that he did not spend much time looking at the appellant's file and his admission on cross-examination that he had had no personal contact with the appellant nor had he gathered any information from the appellant's family, teachers, or friends reveal that he did not have sufficient knowledge of the appellant's background on which to base an expert opinion. *State v. M.M.*, *supra.*

■ The State also argues that under the decision of a majority of this Court in *State ex rel. Cook v. Helms*, *supra*, rehabilitative prospects are not an issue at a transfer hearing, where, under W.Va. Code § 49–5–10(d)(1), probable cause alone is sufficient ground for transfer. We note that a minority of this Court still does not agree with the interpretation of W.Va. Code § 49–5–10(d)(1) given in *State ex rel. Cook v. Helms*, *supra. See Helms*, *supra*, (dissenting opinion of McGraw, J., joined by Harshbarger, J., filed June 23, 1982). In any event, the transfer court is not precluded from hearing such evidence and giving it weight when making the decision to transfer. When a party seeks to introduce such evidence it must be competent and comport with the requirements of *State v. M.M.*, *supra*. It does not matter that the State was not *required* to introduce such evidence.

Since we have ruled that the transfer order is invalid, there is no need to address the appellant's final contention that there was a stay in effect from the date of the transfer hearing, which precluded the State from seeking indictments from the grand jury. At this stage, the indictments have no effect in light of our remand of this case to the juvenile jurisdiction of the Kanawha County Circuit Court.

Because of the accumulation of errors in the transfer proceedings below and because of the lack of adequate and reviewable findings of fact in the transfer order and record, we reverse the order of the Circuit Court of Kanawha County, transferring the appellant to the criminal jurisdiction, and remand this case to that court which should commence forthwith and with all deliberate speed further proceedings consistent with this opinion.[4]

Reversed and remanded.

---

4. In the argument of this case the State represented for the first time that under the provisions of W.Va. Code § 62–14–1, the time within which the appellant's trial must be commenced was within six days of expiration. Subsequent-

ly, the appellant filed a letter with the Court in which he contends that the 120 day detainer period has already expired. Neither the State nor the appellant have briefed this issue on

appeal. Consequently, we do not here make a finding on the issue.

However, we do note that there is a difference between the time limitations contained in the detainer statutes and the speedy trial provisions of W.Va. Code §§ 62–3–1 and 62–3–21 (1977 Replacement Vol. & Cum. Supp. 1982). We note that the State's representation that only six days remain on the detainer are incorrect, and without so holding, we recognize that under the State's chronology of the events in this case at least 16 and possibly as many as 24 days remain within which the appellant may be brought to trial, without even considering that the provisions of W.Va. Code § 62–14–1 requiring good cause for continuance may be less stringent than analogous provisions of W.Va. Code §§ 62–3–1 and 62–3–21. *See State ex rel. Maynard v. Bronson,* 167 W.Va. 35, 277 S.E.2d 718, 721 (1981).