403 S.E.2d 182

**K.M. COMER**

v.

**TOM A.M.; Louise C.; and the West Virginia Division of Health and Human Resources.**

**No. 19639.**

Supreme Court of Appeals of West Virginia.

March 15, 1991.

Laurence W. Hancock, Hancock and Sears, Ravenswood, for Tom A.M.

Trooper K.M. Comer, pro se.

PER CURIAM:

This is an appeal from a decision by the Circuit Court of Jackson County transferring the fifteen-year-old appellant Tom A.M.,[1] from juvenile jurisdiction to the court's criminal jurisdiction pursuant to

---

1. Tom A.M. was born on October 7, 1975 and was fifteen years old when the alleged crime was committed.

*W. Va. Code* 49–5–10(a) [1978]. Based upon our review of the petition for appeal, the briefs and the record, we affirm.

## I

Tom A.M. was charged on January 16, 1990, with the first-degree sexual assault of his nine-year-old sister in violation of *W. Va. Code*, 61–8B–3(a)(2) [1984]. A juvenile petition was filed on January 19, 1990 by K.M. Comer, the investigating officer from West Virginia State Police. Prior to the scheduled adjudicatory hearing on the petition, the State timely moved to transfer the juvenile to the court's criminal jurisdiction pursuant to *W. Va. Code*, 49–5–10(a) [1978]. At the transfer hearing on January 29, 1990, the circuit court took judicial notice that Tom A.M., based on his admission of the felony offense of breaking and entering, had already been adjudicated delinquent.

Testimony at the transfer hearing established that on January 16, 1990, the victim told a counselor at school that her brother, Tom A.M., had been sexually assaulting her for the past several days. The counselor contacted John Mellinger, Tom A.M.'s probation officer, who, then, contacted Regina Polk, a child protective services worker for the Department of Health and Human Services and Trooper Comer. About 6:00 p.m. Mr. Mellinger, Ms. Polk and Trooper Comer went to Tom A.M.'s home and told him of the allegations.

The victim told Ms. Polk that Tom A.M. had tied her with ropes, removed her clothing, kissed her breasts, touched and "hurt" her genital area. The victim also said that Tom A.M. had written on her body with a pen or magic marker. Some of the marks, namely arrows pointing to her breasts and marks on her back and buttocks, could still be detected by Ms. Polk even though the victim had just bathed. The victim told Ms. Polk that Tom A.M. had written "suck me" on her chest with arrows pointing to her

breasts and "had placed his privates inside of [her] privates." The victim was taken to the hospital and her physical examination revealed that she had been sexually active for some time because the "vaginal vault was easily entered with the speculum." [2]

After Louise C., the mother of both the victim and Tom A.M., returned from the hospital, Trooper Comer, in the presence of Louise C. and Mr. Mellinger, advised the juvenile of his rights, and thereafter Tom A.M. waived his rights and with his mother signed the waiver of rights form.[3] In the first interview, Tom A.M. denied sexually assaulting the victim but admitted drawing on her body and rubbing against her. The first interview occurred between approximately 8:30 and 9:00 p.m. on January 16, 1990.

After taking a statement from the victim, Trooper Comer arrested Tom A.M. about 9:30 p.m. While the complaint was being prepared, Tom A.M. went to Trooper Comer and said he had lied during the first interview and wanted to be honest. Again with his mother and Mr. Mellinger present, the juvenile waived his rights and signed the waiver of rights form. In the second interview, Tom A.M. said that although he removed the victim's underpants and inserted his right forefinger into her vaginal area, he never used force or had sexual intercourse. Immediately after the second interview, about 11:00 p.m., the juvenile was arraigned before a magistrate.

According to the psychological evaluation ordered by the circuit court, Tom A.M. has low average intelligence but performs on the third grade level in reading and the seventh grade level in arithmetic. The psychologist reported Tom A.M.'s denial of sexual intercourse, but noted a "progression or escalation in his acting-out behaviors and anti-social behavior." The psychologist concluded that Tom A.M. was "in desperate need of rehabilitation" to reverse

---

**2.** In August, 1989, the victim's physical examination indicated no sexual activity. This examination occurred because the victim had accused another person of sexually assaulting her. Because of the results of the physical examination, no charges were filed.

**3.** The court considered testimony about juvenile's statements after overruling a motion to suppress.

his behavior and recommended education, consistency and structure in his environment.

On February 1, 1990, the circuit court entered an order granting the motion to transfer based on the finding that probable cause existed to believe that Tom A.M. had committed first-degree sexual assault.

In seeking reversal, Tom A.M. has four primary assignments of error: first, the court did not make a finding concerning Tom A.M.'s personal factors as required by statute; second, the court, in a suppression hearing, should · have suppressed Tom A.M.'s statements because his rights were not adequately protected during his interrogations; third, because the court based its determination of probable cause primarily on hearsay evidence, its finding of probable cause should be set aside; and, four, the court failed to resolve all ambiguities in favor of retaining juvenile jurisdiction.

## II

■ The juvenile alleges that the circuit court failed to make a finding on his personal factors as required by *W. Va. Code*, 49–5–10(d) [1978]. Tom A.M. alleges that *W. Va. Code*, 49–5–10(d) [1978] requires: first, an inquiry into the juvenile's personal factors, and second, a determination of probable cause to believe that the juvenile committed one of the crimes described in the five subsections.[4]

■ This argument fails to recognize the language of *W. Va. Code* 49–5–10(d)(1) [1978], which, unlike subsections (2) through (5), specifically excludes "further inquiry" when probable cause is found for the specific crimes listed in that subsection. First-degree sexual assault, the crime with which Tom A.M. is accused, is specifically listed in subsection (1).[5] In *State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610 (1982), we examined *W. Va. Code*, 49–5–10(d) and concluded that the standard for transfer "with respect to subsection (1), dealing with the more serious crimes ... [was solely] a finding of probable cause to believe that the child committed any one of those enumerated crimes." *Id.*, 170 W.Va. at 202, 292 S.E.2d at 612. In Syllabus Point 2 of *Cook supra*, we stated:

When a court finds that there is probable cause to believe that a juvenile has committed one of the crimes specified in *W. Va. Code*, 49–5–10(d)(1) (treason, murder, robbery involving the use of or presenting of deadly weapons, kidnapping, first-degree arson, and first-degree sexual assault), the court may transfer the juvenile to the court's criminal jurisdiction without further inquiry. To the extent this holding is inconsistent with *State v. R.H.*, W.Va., [166 W.Va. 280]

4. *W. Va. Code*, 49–5–10(d) [1978], provides:

The court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is a probable cause to believe that:

(1) The child has committed the crime of treason ...; the crime of murder ...; the crime of robbery involving the use or presenting of firearms or other deadly weapons ...; the crime of kidnapping ...; the crime of first degree arson ...; or charging sexual assault in the first degree ..., and in such case, the existence of such probable cause shall be sufficient grounds for transfer without further inquiry; or

(2) A child has committed an offense of violence to the person which would be felony. [sic] if the child were an adult: Provided, That the child has been previously adjudged delinquent for the commission of an offense

which would be a violent felony if the child were an adult; or

(3) A child has committed an offense which would be a felony if the child were an adult: Provided, That the child has been twice previously adjudged delinquent for the commission of an offense which would be a felony if the child were an adult; or

(4) A child, sixteen years of age or over, has committed an offense of violence to the person which would be a felony if committed by an adult; or

(5) A child, sixteen years of age or over, has committed an offense which would be a felony if committed by an adult: Provided, That such child has been previously adjudged delinquent for an offense which would be a felony if the child were an adult.

5. The other crimes listed in *W. Va. Code* 49–5–10(d)(1) [1978], are treason, murder, robbery involving the use and presenting of deadly weapons, kidnapping, and first-degree arson.

273 S.E.2d 578 (1980) and *State v. C.J.S.*, W.Va., [164 W.Va. 473] 263 S.E.2d 899 (1980), those cases are overruled.

*See E.B., Jr. v. Canterbury*, 183 W.Va. 197, 394 S.E.2d 892, 895 (1990).

In *Cook*, we noted that "the statute does not preclude a trial court judge from considering evidence about the child's 'personal factors,' even in circumstances where the child is accused of the enumerated serious crimes." *Id.*, 170 W.Va. at 203, 292 S.E.2d at 613. In the present case, the circuit court specifically requested a psychological evaluation of Tom A.M. and at the conclusion of the hearing noted the report's concerns. Even though the circuit court was not required to address the "personal factors," the circuit court's order noted the juvenile's previous crime and his lack of concern and remorse concerning the allegations concerning his sister. Based on our review of the statute and the record, we find no merit in the first assignment of error.

### III

In his second assignment of error, Tom A.M. claims that the circuit court should not have considered his statements because his rights were not adequately protected during his interrogations. Tom A.M. acknowledges that his mother was present during the interrogations and that both he and his mother were informed of his rights and that he waived his rights, including his right to counsel. However, Tom A.M. maintains that because his mother was also the victim's mother, she was unable to adequately protect his rights and, therefore, his statements should not have been considered during the transfer hearing.

*W.Va.Code* 49–5–1(d) [1982] states in pertinent part:

> Extrajudicial statements, other than res gestae by a child under sixteen years of age but above the age of thirteen to law-enforcement officers or while in custody, shall not be admissible unless made

in the presence of the child's counsel or made in the presence of and with the consent of the child's parent or custodian who has been fully informed regarding the child's right to a prompt detention hearing, his right to counsel including appointed counsel if he cannot afford counsel, and his privilege against self-incrimination. A transcript or recording shall be made of all transfer, adjudicatory and dispositional hearings. At the conclusion of any hearing, the court shall make findings of fact and conclusions of law, and the same shall appear of record.

In Syllabus Point 2, *Matter of Mark E.P.*, 175 W.Va. 83, 331 S.E.2d 813 (1985), we stated:

> " '[Subject to the provisions of W.Va. Code, 49–5–1(d),] [t]here is no constitutional impediment which prevents a minor above the age of tender years solely by virtue of his minority from executing an effective waiver of rights; however, such waiver must be closely scrutinized under the totality of the circumstances.' Syllabus Point 1, as modified, *State v. Laws*, 162 W.Va. 359, 251 S.E.2d 769 (1978)." Syllabus Point 3, *State v. Howerton*, 174 W.Va. 801, 329 S.E.2d 874 (1985).

Tom A.M. contends that he needed counsel during his interrogations because of his mother's conflict of interest in order for the protection of *W.Va.Code* 49–5–1(d) [1982], to be effective and, therefore, his statements should not be considered voluntary. Tom A.M. points to his age, lack of reading ability and his mother's conflict of interest to show that his waiver was not voluntary.[6]

We have long recognized that "juvenile rights should be guarded with a greater zeal than adult rights to insure that confessions are not a result of adolescence, fear or fantasy." *State v. Laws*, 162 W.Va. 359, 362, 251 S.E.2d 769, 772 (1978). In *Laws*, we listed the following nine factors

---

**6.** On appeal Tom A.M. argues that his mother also has limited abilities and, therefore, was unable to help protect him during his interrogations. Although the same allegations were made below, a review of the record merely indicates that the mother quit school in the seventh grade at age fifteen. However, the mother's testimony does not demonstrate that she was incapable of understanding the proceedings or the waivers of rights.

to be considered for a "totality of the circumstances" evaluation:

> 1) age of the accused; 2) education of the accused; 3) knowledge of the accused as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and remain silent; 4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; 5) whether the accused was interrogated before or after formal charges had been filed; 6) methods used in interrogation; 7) length of interrogations; 8) whether vel non the accused refused to voluntarily give statements on prior occasions; and 9) whether the accused has repudiated an extrajudicial statement at a later date. (Citations omitted).

*Id.*, 162 W.Va. at 363, 251 S.E.2d at 772. *See State v. Howerton*, 174 W.Va. 801, 329 S.E.2d 874, n. 8 (1985); *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197 (1979) (listing the following similar guidelines: "the juvenile's age, experience, education, background, and intelligence, and ... whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.")

■ In Syllabus Point 6 of *In the Interest of Moss*, 170 W.Va. 543, 295 S.E.2d 33 (1982), we required that before considering a juvenile's statement for the purpose of proving probable cause in a transfer hearing, the court must hear evidence concerning the voluntariness of the statements.[7]

> At a transfer hearing, the court must determine the validity of a confession before allowing it to be used against the accused.

The standard for reviewing the circuit court's decision regarding the voluntariness of a confession was stated in Syllabus Point 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978):

> A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.

■ In the present case, although the juvenile's written statements were not introduced as evidence, Trooper Comer testified that both statements were voluntary and made after Tom A.M. and his mother agreed to waive his rights. The second statement was made after Tom A.M. told the state trooper that he wanted to be honest and that he lied in the first statement. Although Trooper Comer was cross-examined by counsel for Tom A.M., no questions were raised concerning either the contents of the statements or the involuntariness.

■ After hearing the evidence, the circuit court found the statements were voluntarily given.[8] We find no error in this ruling because there is insufficient evidence to demonstrate under the totality of the circumstances that the statements were involuntary. Nothing in the record suggests that the juvenile was mentally deficient. Although the juvenile was only 15 years old, he was familiar with the criminal justice system. His mother was present when both statements were taken and no claim of coercion is made. Finally, the juvenile and his mother signed written waivers of his rights and the interrogations were not unduly prolonged.[9]

---

**7.** Tom A.M. argues that a suppression hearing should have been held to determine the voluntariness of his statements. In a criminal trial the purpose of an *in camera* hearing is to make the determination of voluntariness out of the presence of the jury. In a transfer hearing, where there is no jury, the judge can make the determination of the voluntariness without a special hearing. *See In Interest of Moss supra*, 170 W.Va. at 551, 295 S.E.2d at 42.

**8.** Our decision that the State met our standards for determining the voluntariness of a juvenile's statements for use in a transfer hearing does not

dictate the admission of the statements in the criminal proceeding. Rather, the trial court must hold an *in camera* hearing to determine the voluntariness of the statements before they are introduced in the criminal trial. *See Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990) and *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

**9.** Tom A.M. contends that his statements should be inadmissible because the police failed to present him immediately before a neutral juvenile officer. The issue at a transfer hearing is the existence of probable cause and not culpa-

## IV

■ Tom A.M.'s third assignment of error is that the circuit court based its finding of probable cause primarily on hearsay evidence, and, therefore, should be set aside. A finding of probable cause to believe that the juvenile has committed the offense alleged in the juvenile petition is necessary before a juvenile can be transferred to adult jurisdiction. In Syllabus Point 1, *Moss supra*, we stated the following standard for determining probable cause in a transfer hearing:

> Probable cause for the purpose of transfer of a juvenile to adult jurisdiction is more than mere suspicion and less than clear and convincing proof. Probable cause exists when the facts and circumstances as established by probative evidence are sufficient to warrant a prudent person in the belief that an offense has been committed and that the accused committed it.

*In accord* Syllabus Point 1, *State v. Sonja B.*, 183 W.Va. 380, 395 S.E.2d 803 (1990); Syllabus Point 2, *In the Interest of H.J.D.*, 180 W.Va. 105, 375 S.E.2d 576 (1988). In making a decision to transfer a juvenile, "[t]he trial judge himself must make an independent determination upon substantive facts that probable cause exists." *In Interest of Clark*, 168 W.Va. 493, 495, 285 S.E.2d 369, 370 (1981).

■ Although we have not required "strict adherence to the rules of evidence ... [in a transfer hearing] as required in a criminal trial ..." (Syllabus Point 4, in part, *In re E.H.*, 166 W.Va. 615, 276 S.E.2d 557, (1981)), we require more than mere hearsay evidence. In Syllabus Point 3, *Moss supra*, we stated:

> The probable cause determination at a juvenile transfer hearing may not be based entirely on hearsay evidence.

■ At the transfer hearing in the present case, the State presented testimony from Louise C., the mother, Mr. Mellinger, Ms. Polk and Trooper Comer. Although a substantial portion of the testimony was hearsay, Louise C. and Ms. Polk testified that they saw markings on the victim, the psychological report was introduced, and statements from the victim and the juvenile were considered. Counsel for Tom A.M. objected to the hearsay testimony and the trial judge was aware of the problems of hearsay testimony. Our review of the record indicates that Tom A.M.'s transfer was not based solely on hearsay testimony. We have also given "broader latitude on evidentiary matters [in transfer hearings], since it is assumed that a judge can weed out the extraneous from the relevant and because of his legal training will not be influenced by otherwise inadmissible evidence." *In re E.H. supra*, 166 W.Va. at 627, 276 S.E.2d at 565.

Based on the record that does not consist entirely of hearsay testimony, we find no error in the circuit court's finding of probable cause.

## V

■ The final assignment of error is that the circuit court failed to resolve all ambiguities in favor of retaining juvenile jurisdiction. *W.Va.Code* 49–5–10(a) [1978], requires that the State has the burden of establishing the grounds for transfer "by clear and convincing proof." The only evidence indicating that Tom A.M. should be treated within the juvenile justice system is the psychological report that found Tom A.M. "in desperate need of rehabilitation" and recommended education, consistency and structure. However, the report also noted a progression of anti-social behavior and a lack of remorse.

■ In reviewing the factual finding contained in an order transferring a juvenile to the criminal jurisdiction of a circuit court, this Court has consistently applied a "clearly wrong" standard of review:

> Where the findings of fact and conclusions of law justifying an order transfer-

bility. The prompt presentment issue is not relevant to the circuit court's decision to transfer the juvenile and was not raised below. On remand, the prompt presentment issue should be examined separately from the determination of voluntariness. *See State v. Moss*, 180 W.Va. 363, 376 S.E.2d 569, 580–81 (1988).

ring a juvenile proceeding to the criminal jurisdiction of the circuit court are clearly wrong or against the plain preponderance of the evidence, such findings of fact and conclusions of law must be reversed. W.Va.Code § 49–5–10(a) [1977]. Syllabus Point 1, *State v. Bannister,* 162 W.Va. 447, 250 S.E.2d 53 (1978). *Accord,* Syllabus Point 1, *In the Interest of H.J.D.,* 180 W.Va. 105, 375 S.E.2d 576 (1988); Syllabus, *State v. D.W.C.,* 163 W.Va. 494, 256 S.E.2d 894 (1979).

Based on our review of the record, we find that this assignment of error is without merit because the trial court's finding of probable cause was not clearly wrong.

Accordingly, the order of the Circuit Court of Jackson County transferring Tom A.M. to its criminal jurisdiction is hereby affirmed.

Affirmed.