**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **L.D.**

**No. 25-287** (Cabell County CC-06-2024-JA-19)

## MEMORANDUM DECISION

Petitioner Mother A.H.[1] appeals the Circuit Court of Cabell County's April 9, 2025, order, terminating her parental rights to L.D., arguing that it was error to adjudicate her following the DHS's failure to disclose relevant materials through discovery.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision vacating the circuit court's July 30, 2024, adjudicatory order and its April 9, 2025, dispositional order and remanding the matter is appropriate in accordance with the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure.

The proceedings below were initiated in February 2024 when the DHS filed an abuse and neglect petition alleging that the petitioner and the child's father physically abused then five-year-old L.D. Due to the child's excessive bruising, sexual assault nurse examiners ("SANE") Courtney Wellman and Tammy Zornes conducted a physical evaluation. At a preliminary hearing in March 2024, the petitioner requested a continuance because counsel had "been informed that there's some discovery that I have not received." Specifically, the petitioner's counsel believed that photographs of the child's injuries and related medical records existed, among other materials. In response, the guardian acknowledged that a SANE examination took place and stated that she had received the photographs taken during the exam. Counsel for the DHS acknowledged possession of the photos and indicated that he would provide them to the petitioner. In the resulting order, the circuit court directed the DHS "to promptly provide all discovery to counsel." The parties reconvened for the preliminary hearing in April 2024, where the petitioner requested a continuance to review the "90-some pages of discovery"[3] that the DHS emailed to counsel approximately one hour before the hearing. The circuit court granted the continuance, emphasizing

---

[1] The petitioner appears by counsel Eric Anderson. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Heather L. Olcott. Respondent Father D.D. appears by counsel Paula L. Harbour. Counsel Allison K. Huson appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The breadth of what this discovery included remains unclear.

that the DHS was "to promptly provide all discovery to counsel," and ultimately held the preliminary hearing in May 2024.

At the adjudicatory hearing on July 23, 2024, the court heard testimony from both parents concerning the DHS's allegations. Following this testimony, the guardian called SANE nurse Tammy Zornes as a witness. The petitioner's counsel objected, arguing that neither the DHS nor the guardian had provided a witness list prior to the hearing to inform him that the SANE nurse was going to testify.[4] In response, the court asked if the petitioner had "moved for discovery," which counsel confirmed he had, explaining that he "asked for any discovery that [was] presented." The guardian argued that the witness should be permitted to testify because she had taken the photographs of the child's bruising during the SANE examination, which had been previously marked for identification purposes as the guardian's exhibits during the petitioner's cross-examination.[5] The circuit court overruled the petitioner's objection, stating that the SANE nurse's testimony was "too important" to exclude. Accordingly, this witness proceeded to testify as to her physical evaluation of L.D. At multiple points during her testimony, the witness stated that she would need to refer to her written report to refresh her memory. Following the guardian's direct examination of this witness, the petitioner's counsel explained to the court that he never received the SANE nurse's written report. In response, the circuit court stated "[y]ou can ask her about that. I didn't hear any testimony, really, about that," and allowed the petitioner's counsel to proceed with cross-examination.

At the conclusion of the adjudicatory hearing, the DHS's counsel noted that both parents completed parental fitness evaluations, but the circuit court stated that it had not seen the evaluations as they were not filed with the court.[6] The circuit court then went on to dismiss the allegations against the father, stating that the DHS did not prove that he physically abused L.D. or failed to protect her from physical abuse. Counsel for the father noted that he too never received discovery in the case, including the SANE nurse's written report, to which the circuit court stated "[w]ell, you're entitled to those," and that the parties "should comply with discovery." Additionally, the petitioner's counsel raised concerns that the child was being removed from her current kinship placement for bruising similar to what was alleged in the petition, which the

---

[4] On appeal, the petitioner's counsel concedes that he had received the witness list via electronic filing and does not challenge his notice of this witness.

[5] After the SANE nurse testified to the nature of these photographs on direct examination, the guardian moved to admit these exhibits into evidence, which was granted with no objection.

[6] It appears that the father's parental fitness evaluation results were provided to the petitioner after the adjudicatory hearing. The father's parental fitness evaluation indicated that the father had a "faking good" approach and that there were concerns regarding his ability to parent, much like the petitioner's evaluation. In some categories, the father also scored lower or received less favorable feedback than the petitioner, and the results illustrated inconsistencies with the father's testimony at adjudication.

petitioner initially identified during a supervised visit.[7] The guardian proffered that "the bruises [were] not the same" as those the petitioner was alleged to have caused, to which the court stated, "I'm not going to worry about that right now," adding that the parties could present evidence on the issue at a later date. The circuit court then stated that "based upon the testimony, I will find probable cause" that the petitioner abused L.D. The DHS's counsel attempted to clarify that the appropriate standard was clear and convincing evidence, but the circuit court again repeated it was using the probable cause standard to "adjudicate [the petitioner] at this time." The circuit court's subsequent written order contained no detailed findings of fact or conclusions of law, nor did it specify the evidentiary standard employed and, instead, simply concluded that the petitioner "has abused the minor child, [L.D.]"

Because the resolution of this matter turns on the circuit court's improper adjudication of the petitioner, it is sufficient to note that the circuit court held a final dispositional hearing, which concluded in February 2025. Ultimately, the circuit court terminated the petitioner's parental rights to L.D.[8] It is from this order that the petitioner now appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner asserts that the DHS violated Rule 10(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings governing disclosure of photographs of the child's injuries, the SANE nurse's written report, and the father's parental fitness evaluation, all of which resulted in the petitioner's due process rights being violated at adjudication.[9] We agree. Pursuant to Rule 10(b)(3) and (4), the DHS's attorney was required to provide the petitioner's counsel with "[c]opies of . . . photographs . . . [and] results or reports of physical and/or mental examinations . . . which are material to the preparation of the respondent's case or are intended for use by the [DHS's] attorney as evidence in chief at the trial."[10] Here, the DHS admits that it failed to provide the petitioner with photographs of the child's injuries and the SANE nurse's written report of the only physical examination

_____

[7] A DHS summary report provided to the petitioner's counsel prior to the adjudicatory hearing indicated that "the service provider emailed the photos" of the child's injuries, which were sustained while outside the petitioner's care; however, at the dispositional hearing, the petitioner's counsel confirmed that he "never got any pictures or any discovery regarding" this issue.

[8] The permanency plan for L.D. is to remain in her father's care.

[9] On appeal, the DHS concedes that the petitioner was not provided with the SANE nurse's report, in addition to several other discoverable documents, in violation of Rule 10(b). The DHS argues that this constitutes error and urges this Court to vacate and remand the matter so that the petitioner "may conduct the adjudicatory hearing with the benefit of complete discovery."

[10] Although we recognize that the SANE nurse was called as the guardian's witness, this rule imposes an explicit duty on the *attorney for the petitioner* (which, in this case, was counsel for the DHS) to provide the respondent's counsel with, among other things, photographs, written reports of a child's physical examination, and the results of a parent's mental evaluation that, like in this case, are material to the respondent's case.

conducted of L.D.—evidence that served as the foundation of the DHS's allegations against the petitioner. Further, the DHS admits that it failed to provide the petitioner with the father's parental fitness evaluation. As the petitioner asserts, without the benefit of such discovery, her ability to formulate her defense, including the ability to conduct meaningful cross-examination, was hindered. The petitioner correctly argues that this discovery was critical to her ability to highlight inconsistencies in witness testimony or establish that she was not an abusing or neglecting parent. As West Virginia Code § 49-4-601(h) commands, "[i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." Further, we have explained that this statute "and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of [her] child, without notice and the opportunity for a meaningful hearing." Syl. Pt. 6, *In re S.C.*, 245 W. Va. 677, 865 S.E.2d 79 (2021) (quoting Syl. Pt. 2, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973)). Therefore, in denying the petitioner certain discovery items that were material to the preparation of her case, the circuit court deprived the petitioner of the meaningful opportunity to be heard at adjudication.

Also troubling is the circuit court's application of the wrong evidentiary standard when adjudicating the petitioner.[11] Here, the circuit court applied the standard of "probable cause" to determine whether the petitioner abused or neglected L.D. However, West Virginia Code § 49-4-601(i) is explicit that, at adjudication, the DHS is required to prove the "conditions existing at the time of the filing of the petition . . . by *clear and convincing* evidence." (emphasis added). Critically, we have explained that "[p]robable cause . . . is more than mere suspicion [but] *less than* clear and convincing proof." Syl. Pt. 1, in part, *In re Moss*, 170 W. Va. 543, 295 S.E.2d 33 (1982) (emphasis added). Accordingly, we conclude that the circuit court erred in adjudicating the petitioner. Because adjudication was in error, we similarly conclude that termination of the petitioner's parental rights was inappropriate and vacation of both orders is required.[12] *See* Syl. Pt. 3, *In re R.M.*, 252 W. Va. 422, 923 S.E.2d 352 (2025) (holding that an appropriate adjudicatory determination "is a prerequisite to further continuation of the case" (quoting Syl. Pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983))); Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009) ("Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that

---

[11] On appeal, the DHS concedes that this error occurred and argues that such error "frustrated the abuse-and-neglect process," warranting vacation and remand of both the adjudicatory and dispositional orders.

[12] We note that the petitioner raises several additional assignments of error on appeal concerning the termination of her parental rights and the denial of her various motions for improvement periods. However, it is unnecessary to address these assignments of error, given that we are vacating the petitioner's adjudication and subsequent termination of her parental rights and remanding the matter for further proceedings, at which point the petitioner will be free to again move for an improvement period.

process and entry of an appropriate . . . order." (quoting Syl. Pt. 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001))).

For the foregoing reasons, we vacate the circuit court's July 30, 2024, adjudicatory order and its April 9, 2025, dispositional order as they relate to the petitioner only, and remand the case for further proceedings. On remand, the circuit court is instructed to ensure compliance with Rule 10 of the Rules of Procedure for Child Abuse and Neglect Proceedings prior to holding a new adjudicatory hearing and to conduct further proceedings consistent with the applicable rules and statutes. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Vacated and remanded.

**ISSUED:** June 1, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

5